TERRENCE B. JACKSON, *Admr., et al. v.* THE CHESAPEAKE & OHIO RAILWAY COMPANY, *et al.*

(No. 6944)

Submitted May 20, 1931.  Decided June 2, 1931.
(Rehearing denied July 24, 1931)

*Carl C. Sanders, J. W. Maxwell* and *John W. Love,* for plaintiffs in error.

*Fitzpatrick, Brown & Davis,* and *C. W. Strickling,* for defendants in error.

LIVELY, JUDGE:

Rose Mary Fields was injured and Josephine Jackson, Terrence B. Jackson, Jr., Clarence W. Jackson and Annie Perkins were killed on October 28, 1928, on a railroad crossing in the city of Montgomery by westbound Chesapeake & Ohio train No. 101. Actions were instituted by the injured woman and by the respective administrators of the deceaseds' estates, which cases were, by consent of the litigants, consolidated. The lower court set aside jury awards of $7,500 for injuries sustained by plaintiff Fields and $5,000 for each death and awarded a new trial, and plaintiffs prosecute error to that judgment.

The point of accident is known as the Lee Street crossing, where the railroad company maintains three tracks of standard gauge and eight feet apart, running east and west and parallel with each other. Lee Street, used extensively for pedestrian and vehicular traffic and which crosses the tracks at approximate right angles, leads from the Kanawha River bridge and north side of the tracks to the south side thereof whence it leads into Gaines Street, which is parallel with the railroad tracks. Proceeding from the south side of the tracks, one crosses first the sidetrack, next the eastbound track, and last the westbound track. About 666 feet west of the crossing is located the passenger station, and about 150 feet east of the crossing is a two-degree curve. With this geographical outlay before us, we proceed to the details of the accident. A map will visualize the situation.

The injured woman and those killed, in company with James Robinson, drove from Lewisburg to Montgomery in a Ford sedan on Sunday, October 28, 1928, where they picked up a friend and proceeded to Institute, located west of Montgomery, and later returned the friend to her home in Montgomery. On each occasion they crossed the Lee Street crossing. About 8:45 o'clock in the evening, on their return to Lewisburg, James Robinson, driving the car in Gaines Street in a westerly direction, approached the Lee Street crossing from the south side. He says that he stopped at the first track, looked to the east, and then proceeded over the cross-

ing at a speed of three to five miles an hour. Some railroad cars, parked on the first track 27 feet west of the crossing obscured his view to the west, in which direction he lent his attention, and having passed the railroad cars, he again glanced to his right or in an easterly direction, when he noted the headlight of the train approaching from the east. The train was but a short distance (estimated about fifty feet) from him, and he could not tell on what track the train was; and in an endeavor to clear his car of the crossing, he increased his speed, but the train struck the car, with the result that one of the occupants was injured and four killed. Robinson, the driver, escaped with minor injuries.

Plaintiffs charge that defendant railway company was negligent (1) in failing to give statutory signals, (2) in failing to maintain safety devices at the crossing, and (3) in operating its train at an excessive rate of speed. The charge of negligence is denied by the railway company, whose defense is that plaintiffs' contributory negligence is the proximate cause of the accident.

There is no contention that any flagman, gates, or other safety devices were maintained at the crossing. Plaintiff Fields, injured about the head and back, suffered a lapse of memory as a result of the accident. Robinson says that he did not hear the train's whistle or bell, as does Melvin Turner who was expecting a friend on train No. 101 and says that he listened "inside my place of business." Pinkey Gwinn, who was with Turner, heard the train whistle and twenty other witnesses say either that the whistle was blown or the bell rung. The testimony varies on the question of the rate of speed at which the train was operated. Persons observing the train as it passed say that it was travelling from 35 to 50 miles an hour. Locomotive engineer Brown testifies: "I was aiming to get the train down to 15. It might have been a little better." In this connection it is to be noted that Montgomery is a regular stop for the train, and Brown says that he was preparing his train for the stop at the station. As an indication of the excessive speed, plaintiffs' witnesses testify that the train stopped below its usual point and based their opinions on the distance between the crossing and the rear coach

of the train. This is explained by defendant on the ground that the accident occurred on Sunday, on which day the train carries three cars less than on other days.

In a clear opinion, omitted from the record but by consent of counsel made a part of defendant's brief, the learned judge below accepted, with reluctance, the jury's opinion that the railway company was primarily negligence and concluded that its opinion must have been based on the evidence relating to excessive speed. The reason given for setting aside the verdict and awarding a new trial is that plaintiffs were contributorily negligent, the judge stating that "the physical circumstances indicate that he (the driver) either did not look, because if he had looked he could have seen the oncoming train, or else that he must have seen it but decided to go on regardless of the danger." Waiving the question of primary negligence, was the court justified in setting aside the verdict?

Whether a traveler in an automobile upon a highway is guilty of contributory negligence in entering upon a railroad crossing is a question for the jury if the facts are in dispute or where from conceded facts two conclusions of contrary views may be drawn with equal plausibility. *Canterbury* v. *Director General*, 87 W. Va. 233. Where, however, the facts are not substantially disputed, the court may decide the question of contributory negligence. *Krodel* v. *Railroad Company*, 99 W. Va. 374, 385; *Boggess* v. *Public Service Company*, 107 W. Va. 88. A determination of that question involves a comparison of the standard of care which the law imposes upon one entering a railroad crossing and the conduct of the occupants of the car. Plaintiffs' evidence includes proof that the railway company owns a small strip of land (right of way) adjacent to the crossing lying east thereof and between the sidetrack and Gaines Street, and that it was customary for cars to be parked there. When Robinson reached the sidetrack, he says he stopped his car and looked. He admits that he could see to the east a short distance but claims that his view was obstructed by a truck and some automobiles "on the right-hand side as you approach." Is it the contention of plaintiffs that the truck and automobiles were on the right of way? The evidence does not so show. In addition

to Robinson's testimony, Topson, a witness for plaintiffs, who seems to have been on Gaines Street 120 feet west of the crossing, states that he saw the car enter the crossing but could not see the train because there were "automobiles or box cars, or something; and then there is a hotel right there by the side of us, and they stack up beer boxes and pop boxes right outside there by the telephone pole, and that could probably have been the cause of me not seeing it." Defendant's exhibit No. 2 shows boxes west of the crossing. In another part of his testimony, Topson testifies, in response to a question involving Robinson's ability to see where he stopped, that "if there was cars there, box cars or what you call them, there, he couldn't see the train, no sir." There is no evidence adduced by plaintiffs which definitely locates the obstructing vehicles. Were they on the right of way, on the road, or where? Without positive and definite evidence before it, the jury could not say that the view to the east was obstructed. Carson, a witness for defendant, claims to have been at the south side of the crossing just as the train pulled by and says there was nothing to obstruct the driver's view to the east. Why then didn't the occupants of the car see the train? It may be true that the curve in the track caused the headlight of the train to shine upon the buildings to the right of the train so that, as one witness stated, it was difficult to determine whether it was a train or an automobile approaching; but consideration must be given to the fact that the headlight on the train was a flood type and the night was clear. Measurements introduced on behalf of the defendant show that at a point in the street sixty-two feet south from the place of accident (a distance greater from the accident than the point at which Robinson states he stopped) there is a line of vision of 1,365 feet to the east, which increases as one approaches the tracks. Theodore Burwell, a witness for defendant, testified that he had started to walk across the tracks from the south side but retraced his steps when he saw the train coming, and plaintiffs' car passed him on the crossing after he started back toward the south side. Several witnesses saw the train approaching when the car entered the crossing. Starbuck, the locomotive fireman saw the automobile turn into the cross-

ing after the whistle for the crossing had been blown and at a time when the train was probably not more than five hundred feet from the crossing and in full view of the automobile, which, he says, was traveling slowly and which he thought would, like many cars he sees on crossings daily, stop before it reached a place of danger. Several witnesses say that the train was between 200 and 300 feet from the crossing when the car entered the crossing. The law requires of a person about to enter upon a railroad crossing such care as would be exercised by a person of ordinary prudence under like circumstances, *(Boggess v. Public Service Company, supra)*; and, if the traveler looks for an approaching train, he must select a position from which an effective observation can be made. *Robertson v. Railway Company*, 99 W. Va. 356, Pt. 3, Syl. Railroad crossings always signify danger. While the railway company is under a duty not to negligently operate its service, the vigilance required of a traveler is commensurate with the danger. *Cavendish v. Railway Co.*, 95 W. Va. 490. If, as Robinson contends, the view was obstructed to the east, prudence required him to ascertain from a point where he could effectively determine whether he might cross the tracks in safety. While it is true that the defendant had placed its cars west of the crossing, Robinson knew that no train would be coming from the west on the sidetrack; hence, while going over the first track he should have glanced to the east if his view to the right had been obstructed. The evidence, however, does no warrant his statement that his view was obscured to the east, so that with a vision of more than one thousand feet, we can but conclude that by a reasonable and fair use of his faculties and senses and prudent care for his own safety, he could have seen the train. *Robinson v. Railway Co.*, 90 W. Va. 411, Pt. 2, Syl. While we have detailed Robinson's conduct, we are not directly concerned therewith since his negligence is not imputable to plaintiff Fields and the other plaintiffs' decedents, who might assume that Robinson would exercise ordinary care. They could not, however, close their eyes to a dangerous situation, for an occupant of a car, not the driver, must take reasonable precaution to avoid accidents, and if he does not do so and his negligence contributes

to the accident, there can be no recovery. *Waller* v. *Railway Co.*, 108 W. Va. 576. In *Morris* v. *Railroad Co.*, 107 W. Va. 97, 102, the rule is stated that "in the absence of evidence of the conduct of one attempting to cross a railroad crossing, it will be presumed that he used ordinary care, his safety being involved." Where, however, evidence to the effect that the passenger could have seen the approaching train had he effectively used his sense of sight is not substantially disputed, the presumption is rebutted.

We must conclude that the evidence submitted on the question of contributory negligence admits of but one rational conclusion, and, further, that the finding of the jury on this question was not warranted by the facts adduced.

We therefore affirm the judgment of the court below.

*Affirmed.*