HENRY A. GILKERSON, *Administrator*

*v.*

BALTIMORE & OHIO RAILROAD CO., *et al.*

(No. 9807)

Submitted September 25, 1946. Decided December 21, 1946.

650

*George S. Wallace* and *M. J. Ferguson,* for plaintiffs in error.

*W. R. Price, Lilly & Lilly* and *R. G. Lilly,* for defendant in error.

HAYMOND, JUDGE:

On the night of January 7, 1944, between the hours of eleven o'clock and twelve o'clock, midnight, Virgil Ray Gilkerson, a youth fifteen years of age, while riding as a guest with other companions in a automobile driven by Orville Hall, was killed in a collision between the automobile and a passenger train of the Baltimore and Ohio Railroad Company at a grade crossing in the western section of the City of Huntington, which is located in Wayne County, West Virginia. This action was instituted by the plaintiff, Henry A. Gilkerson, the father of the deceased, as administrator of his estate, against the defendants, Baltimore and Ohio Railroad Company, and Lynn B. Van Lear, the engineer, and Carl J. Williams, the fireman, who were operating the train at the time of the wreck, to recover damages for the alleged wrongful death of his son. The jury returned a verdict in favor of the plaintiff against the three defendants for $10,000.-

00, upon which verdict the trial court entered final judgment. To that judgment the defendants prosecute this writ of error.

The collision occurred on Burlington Road, in the City of Huntington, at the point where that public street or highway crosses the main line of the Baltimore and Ohio Railroad Company, which passes between Kenova and Huntington, in this State. The grade crossing on which the train struck the automobile is located 2,010 feet east of the Huntington flood wall. The tracks of the railroad company are straight for a distance of approximately 3,200 feet to the west of the crossing and for a distance of approximately 600 feet to the east of the crossing. U. S. Route 60, which, in this part of the city, passes over and along one of its streets known as Piedmont Road, and extends from Kenova to Huntington, intersects with Burlington Road, a street improved or paved with concrete surface, 20 feet in width, about 300 feet south of the crossing.

From the point of its interesection with Piedmont Road, Burlington Road runs almost due north in practically a straight line, and intersects and passes over, in succession, Bradley Road, the railroad tracks, Waverly Road and Auburn Road. Piedmont Road and Bradley Road are located, respectively, about 300 feet and about 30 feet south, and Waverly Road and Auburn Road are located, respectively, about 80 feet and about 800 feet north, of the railroad crossing. In crossing Bradley Road, a few feet south of the railroad tracks, Burlington Road swerves gradually to the east, but this slight change from a straight line to another straight line does not affect the visibility to and over the railroad crossing. Piedmont Road and Bradley Road, located to the south, and Waverly Road and Auburn Road, located to the north, of the railroad crossing, are public streets which run east and west. They are parallel with each other and the railroad tracks, and they cross Burlington Road at right angles. Piedmont Road, continuing west from its intersection with Burlington Road, south of the railroad

crossing, crosses the railroad tracks at a point 3,223 feet west of the railroad crossing on Burlington Road.

North of the railroad crossing and parallel with the railroad tracks, sections of an abandoned street car line, comprising four iron rails, are imbedded in and extend across the concrete portion of Burlington Road. The northernmost rail of this old street car line is located at a distance of 72.5 feet north of the north rail of the railroad. South of the railroad tracks the surface of Burlington Road is almost level with the top of the railroad tracks. North of the railroad tracks its surface is likewise almost level and on the same elevation as that of the rails for a distance of about 80 feet, at which point the grade descends rather abruptly to a depth of about 15 feet below the elevation of the railroad tracks, about midway between the railroad tracks and Auburn Road. Near the southwest corner of Waverly Road, and approximately 80 feet from the center line of the railroad, is a street light suspended about 19 feet above the surface by a cross-arm on a pole, which cross-arm extends overhead to a point west of the center of Burlington Road. About midway between Waverly Road and Auburn Road, on Burlington Road, there is another light which is also suspended above the surface of the street. These lights were equipped with 400 candle power bulbs and were burning on the night of the collision. There is a third overhead street light at the intersection of Burlington Road and Piedmont Road, about 300 feet south of the crossing. Sixteen and one-half feet east of the center line of the concrete pavement on Burlington Road, and about 28 feet from the north rail of the railroad tracks is a silent railroad crossing sign, which is 14 feet in height. At the time of the collision there were weeds, brush, and bushes or small trees along the railroad right of way between Waverly Road and the railroad tracks west of Burlington Road, which extended from a point near the railroad crossing to the west for a distance of several hundred feet and which ranged from four feet to ten feet in height.

From a point in Burlington Road 113 feet north of the north rail of the railroad, the view to the west along the tracks is clear for a distance of 2,010 feet, or to the flood wall, and from a point in the same road ten feet north of the north rail, the view to the west is clear for a distance of 3,200 feet. The view to the west along the railroad from various points in Burlington Road between 79 feet and 17 feet north of the railroad tracks extends from 1,500 feet to 2,200 feet.

Most of the locations and the distances, set out above, are taken from maps introduced by the defendants, without objection, and the correctness of these maps is not questioned by any of the parties to this action. The locations, distances and conditions, heretofore stated, existed at the time of the collision.

The amended declaration, upon which the case was tried, contained seven counts. The first, second, third, fourth and fifth counts, respectively, allege failure, by the defendants, to operate the train in a proper manner and at a reasonable rate of speed, to keep a proper lookout, to give proper signals by bell and whistle of the approach of the train to the crossing, and to keep reasonable and proper lights burning. The sixth and seventh counts allege violation of a city ordinance by failure to observe speed limits and to install warning signals at the crossing. The separate demurrer of the defendant, Baltimore and Ohio Railroad Company, was sustained to the sixth count and overruled as to all other counts. Issue was joined upon the plea of not guilty of the defendants and the general replication of the plaintiff. At the conclusion of the evidence introduced by the plaintiff, the defendants, jointly and severally, moved the court to direct a verdict of not guilty. This motion the court overruled. After the return of the verdict, the defendants moved the court to set aside the verdict and grant them a new trial. The court overruled the motion and entered upon the verdict the judgment of which the defendants complain.

The decedent and his companions in the automobile at the time of the collision were high school students who, earlier that night, had attended basketball games at Catlettsburg, Kentucky. About ten-thirty o'clock, after the games were completed, Virgil Ray Gilkerson, his brother, Morris Gilkerson, Frank Smith, Jr., Lory B. Hatten, Robert Brown and Franklin McComas, left Catlettsburg in a two door 1935 Ford Sedan owned and operated by Orville Hall. On their way to Huntington they stopped at a restaurant in Ceredo to get something to eat. Not being able to obtain the sandwiches they wanted, they left the restaurant and continued on their way to Burlington Road at its interesection with Piedmont Road, which is located about 300 feet south of the railroad crossing. Traveling in a northerly direction, they crossed the railroad tracks at the Burlington Road crossing and continued on Burlington Road to its intersection with Auburn Road. From that point they drove west by way of Auburn Road to a restaurant known as Maple Grove Inn. A cover charge was required there and, after waiting a short time, they started back toward Piedmont Road, traveling east on Auburn Road and then south on Burlington Road as they approached the Burlington Road crossing.

On their return to the crossing, Orville Hall was driving the automobile and was sitting on the left. Robert Brown and Morris Gilkerson were riding with him in the front seat. Brown was in the middle, and Morris Gilkerson was on the right. In the rear seat Virgil Ray Gilkerson was seated on the right, Lory B. Hatten was seated next to him, and Franklin McComas was seated on the left. Frank Smith, Jr., was also riding on the left side of the rear seat between the legs of McComas. On Burlington Road, south of its intersection with Auburn Road, there is a descending grade in the direction of the railroad crossing for a distance 200 or 300 feet, the low point of which is about 15 feet below the level of the crossing. Then there is an abrupt rise to a point about 80 feet north of the north rail of the railroad

tracks, from which point the grade is level to and across the railroad tracks.

As the automobile approached the crossing, proceeding in a southerly direction, at a speed of from ten to fifteen miles per hour, none of its occupants was talking or making any noise. All the windows were closed except the right rear window. Except Hall, the driver, no one in the automobile attempted to exercise any control in its operation. When the automobile, without being checked in speed or stopped, came upon the railroad tracks, it was struck by an eastbound passenger train of the defendant, Baltimore and Ohio Railroad Company, which was approaching from the west and to the right of the automobile. The front end of the engine struck the right side of the automobile, lifted it upon the flag staff, and carried or dragged it in that position for a distance of 875 feet east of the crossing where the train was brought to a stop. Virgil Ray Gilkerson, his brother, Morris Gilkerson, Robert Brown and Orville Hall, were killed, and Frank Smith, Jr., and Lory B. Hatten were injured. Smith and Hatten testified upon the trial; McComas, the other survivor, was absent in the military service at the time of the trial and did not testify. Separate actions for damages are now pending, by the administrators of Morris Gilkerson, Robert Brown and Orville Hall, for the alleged wrongful death of each, and by Smith and Hatten for the injuries which they sustained.

The train, composed of the engine and three cars, approached the crossing from the west at a speed of about thirty-five miles per hour. It left Kenova at eleven-fifteen o'clock that night and was due at the crossing, located between three and four miles to the east of that station, at about eleven-twenty-five o'clock. It was running on schedule at the time of the collision. The engine, a V-8 type locomotive, was 57 feet in length and 14 feet, 9 inches in height. Its weight was 140,000 pounds. It was equipped with a 250 watt bulb 32 voltage headlight in front, 14 inches in diameter, capable of projecting a

beam of light 900 feet ahead, and with adequate brakes in good working condition. It also had an automatic bell ringer. The coaches of the train were lighted with electric lights. An air brake test was made before the train left Kenova, and two running tests occurred between Kenova and the scene of the wreck. After striking the automobile, the train was brought to a stop at a point 875 feet east of the crossing which, according to the only evidence in the case relative to that incident, was a proper emergency stop. The engineer, being on the far side of the engine, did not see the automobile before it was struck. The fireman first saw it when it was at the old street car tracks on Burlington Road, which location was about 70 feet from the north rail of the railroad.

The principal issues of fact, as to which conflicts in the evidence developed at the trial, arose under the counts in the amended declaration which charge the defendants with actionable negligence in failing to ring the bell and to sound the whistle, and in failing to keep reasonable and proper lights burning. There is little, if any, conflict in the evidence as to the speed of the train, which was stated by the engineer to be thirty five miles per hour at the time of the collision.

On the factual questions of the timely ringing of the bell and the blowing of the whistle, and the keeping of a proper light, as the train approached the crossing, between the whistle post located approximately 1,400 feet west of the Burlington Road crossing and that crossing, both the plaintiff and the defendants produced a number of witnesses. Some of the witnesses offered by the plaintiff testified, without qualification, that no bell was rung and that no whistle was blown or sounded; some testified that they heard no bell or whistle; and one witness for the plaintiff said that he heard the train whistle west of the flood wall, which was located 2,010 feet west of the crossing, but that it did not whistle again before the wreck. A number of the witnesses produced by the defendants testified that they heard the bell or the whistle while the train was traveling between the whistle post and the crossing. Some of the witnesses for the plain-

tiff swore that the headight on the engine was dim, but one such witness stated that he noticed the headlight when he visited and looked at the front of the engine after it had come to a stop, and that, though the headlight was dim, it threw a light for a distance of about sixty five feet. Many witnesses, testifying in behalf of the defendants, said that the headlight on the engine was burning brightly. The denial by the one group of witnesses of the existence of these facts, and the affirmance by the other group that they did in fact occur, produce a conflict in the evidence.

The defendants assign numerous errors, but the judgment is assailed in this Court upon these principal grounds: (1) The demurrer of the defendant, Baltimore and Ohio Railroad Company, to the ·amended declaration, and each of its counts, should have been sustained; (2) the motions of the defendants, made at the conclusion of the evidence for the plaintiff, to direct a verdict for the defendants, should have been granted; (3) the verdict, being general and for entire damages, under the amended declaration which contains some good counts and one faulty count, should have been set aside; (4) the defendants were not guilty of negligence; (5) plaintiff's decedent was guilty of contributory negligence barring recovery; (6) specified instructions offered by the plaintiff, given by the court over objection, should have been refused; and (7) specified instructions, requested by the defendants and refused by the court, should have been given.

The first, second, third, fourth and fifth counts of the amended declaration are good on demurrer. Each of these counts sets forth jointly a complete cause of action against the defendants. Each of them charges the duty of the defendants, states facts which constitute negligent breach and violation by them of such duty, and avers that their negligence was the proximate cause of the injury charged against them. A declaration in tort for personal injuries which charges the duty of the defendant, that this duty was breached by his particular

acts, stated with reasonable certainty, and that the injuries and the damages complained of were caused by such negligent acts, is good on demurrer. *Holton* v. *Clayco Gas Company,* 106 W. Va. 394, 145 S. E. 637; *Dioliollavi* v. *United Pocahontas Coal Company,* 98 W. Va. 116, 128 S. E. 278. The allegation of the duty, the existence or presence of negligence in its performance, and the act working the damage, renders the declaration sufficient. *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661, 28 S. E. 733. Each of the foregoing counts complies with these requirements, and the action of the trial court, in overruling the demurrer as to each of them, was correct.

The seventh count of the amended declaration was also challenged by the demurrer. Though this count, as does each of the counts, jointly impleads the three defendants, it charges no duty, no negligence in its performance, and no resulting injury against either of the two individual defendants named in the count. It merely alleges the duty of the corporate defendant, Baltimore and Ohio Railroad Company, to install the warning device required of it by the ordinance, the pertinent provisions of which are stated, its breach of that duty, and the resulting injurious act. For that reason, the count is faulty and as to it the demurrer should have been sustained.

The joining of the faulty seventh count with the first five good counts in the amended declaration does not, however, render the declaration insufficient on demurrer or require, for that reason, a dismissal of the action. In an action to recover damages for injuries negligently inflicted, good and bad counts may be joined without vitiating the declaration, even though a demurrer to a faulty count was, or should have been, sustained. When that situation occurs, the good counts sustain the declaration. *Freeman* v. *Monongahela Valley Traction Company,* 98 W. Va. 311, 128 S. E. 129; *Ray* v. *Chesapeake & Ohio Railway Company,* 57 W. Va. 333, 50 S. E. 413.

The defendants cite and rely upon the decision of this Court in the case of *Hunter* v. *Gore,* 105 W. Va. 1, 141 S. E. 393, in support of their contention that the incorporation of the seventh count in the amended declaration, which though jointly laid against the three defendants, charges liability against one of them alone, vitiates the declaration. The holding in the *Hunter* case, which was an action in assumpsit, and in which the declaration contains the common counts which allege a joint promise against several defendants, and a special count which alleges a promise upon the part of only one of the defendants, was to the effect that a cause of action upon which the defendants are jointly liable can not be joined with another cause of action upon which one of the defendants alone is liable; and that the declaration, as so framed, presented a clear case of misjoinder of actions, and was, for that reason, demurrable. In an action of tort, however, as a general rule, the liability of the defendants is both joint and several, as distinguished from an action of contract, in which, as a general rule, there may be either, but not both, joint and several liability. When two or more persons are guilty of a joint tort, they may be sued jointly or severally. 1 Corpus Juris, Actions, Section 223. The holding in the *Hunter* case, which, as above stated, was an action for damages for breach of contract, did not involve the question of joint and several liability in an action for tort, and it is, for that reason, not applicable to the question which arises in this case.

The reasons expressed in the opinions of this Court in the *Freeman* and *Ray* cases and the provisions of Section 26, Article 6, Chapter 56 of the Code of West Virginia, 1931, repel and dispose of the proposition advanced by the defendants that the verdict of the jury for entire damages, based upon the amended declaration containing several counts, one of which is defective, renders it impossible to determine the particular count or counts, good or bad, upon which the verdict of the jury is founded in this case. In *Freeman* v. *Monon-*

*gahela Valley Traction Company,* 98 W. Va. 311, 128 S. E. 129, it appeared that the plaintiff was struck and injured, in his person and property, by an interurban car of the defendant company which was operated at the time by one of its motormen. The action was prosecuted jointly against the company and its agent. The declaration contained two counts which impleaded both defendants. One count was predicated upon the negligence of the company for failure to provide suitable warning for persons traveling upon and over the crossing at which the automobile of the plaintiff was struck by the interurban car. The other count charged the defendants with negligence in its operation. A demurrer to the declaration, and each of its counts, was overruled. The jury returned a general verdict in favor of the plaintiff. Upon writ of error, this Court held, in Point 1 of the syllabus:

> "In an action for wrongful injury, if one of the two counts in the declaration be good, the other bad, even though there be a demurrer to the declaration and to each count thereof, and said demurrer is improperly overruled by the trial court, a general verdict giving entire damages will be good, and does not constitute grounds for reversal by this court. Code section 13, chapter 131."

In the opinion this pertinent language appears:

> "The defendants, as stated, demurred to the declaration and to each count thereof and now insist it was error for the lower court to overrule said demurrer. This court is of the opinion that the demurrer should have been sustained as to the first count. Counsel for the plaintiff do not cite us authority, and from our own investigation we are unable to find where there is either a statutory or common law duty imposed upon an electric railway to provide and maintain gates, a flagman, watchman, gong or electric bell, at points where the tracks of the railway intersect and cross a public highway. There being no such duty imposed upon the company to provide them or either of them, it is manifest the failure of the Company to provide them would not be negligence. But assuming that the Company was negligent in this respect certainly it could not be contend-

ed that any such duty existed as to the defendant Musgrave, and in fact he is not charged in the declaration with negligence in this respect, and we therefore think the count is faulty and the demurrer thereto should have been sustained. But the second count of the declaration is a good one and quite sufficient to support the verdict, and as the verdict is a general one, not based on any particular count, the existence of the faulty count, although the demurrer to it was improperly overruled, does not give grounds for reversal. At common law, if there was a general verdict for the plaintiff on a declaration containing several counts, one of which was faulty and entire damages were given it was deemed necessary to set the verdict aside, as the court could not tell upon which count the jury founded its verdict. But this rule of the common law has been changed by section 13 of chapter 131, Code, which follows: 'When there are several counts one of which is faulty, the defendant may ask the court to instruct the jury to disregard it; yet if entire damages be given, the verdict shall be good.' ".

A portion of that section of the chapter of the Code referred to and quoted in the foregoing opinion is incorporated in the Code of West Virginia, 1931, as part of the first sentence of Section 26, Article 6, Chapter 56 of the present Code. The earlier statute, however, has been materially changed and its scope considerably enlarged by the Code of 1931.

The pertinent part of the present statute, in effect at the time of the institution of this action, provides that if the defendant "demurs to the faulty count, or moves the court to instruct the jury to disregard it, and which demurrer or motion is overruled, and entire damages be found, and it can not be seen on which count the verdict was founded, if the jury has been discharged, the verdict shall be set aside, but if it is manifest that the verdict could not have been found on the bad count, the verdict shall be allowed to stand."

Here, under the evidence, it is reasonably clear that the verdict of the jury was based or founded upon the first five counts of the declaration, all of which are good,

and involve the operation of the train by all three defendants. The bulk of the evidence, upon the entire trial, bore upon the issues which arose under those counts, and, in particular, under the fourth count, which charged the defendants with negligence in failing to give proper signals, by bell and whistle, to warn of the approach of the train, and under the fifth count which charged the defendants with negligence in failing to keep proper lights burning on the train as it approached the crossing. The proof to support the charge laid in the faulty seventh count consisted of a stipulation between the attorneys representing the respective parties, that the ordinance, which required the railroad company to install specified warnings, at the crossing, was in effect at the time of the collision, and that the ordinance should be admitted in evidence and read to the jury. It was introduced in evidence in that manner. The ordinance imposed no duty upon the individual defendants. By Instruction No. 3, given at the instance of the plaintiff, which instruction is hereafter discussed, the court told the jury, in effect, that if the jury found for the plaintiff, under the law and upon the facts as set forth in the instruction, the jury should assess damages against the defendant, Baltimore and Ohio Railroad Company.

Upon careful consideration of all the evidence, and the effect which the giving of the foregoing instruction is presumed to have had in relation to the corporate defendant, in arriving at the verdict returned by the jury against all the defendants jointly, it is manifest that the verdict could not have been founded or based upon the faulty seventh count. That being so, the statute provides, and this Court holds, that the verdict be allowed to stand.

The defendants jointly and severally moved the court, at the conclusion of the evidence introduced by the plaintiff, to direct a verdict for the defendants. The evidence produced in behalf of the plaintiff did not show that the individual defendants, Van Lear, the engineer, and Wil-

liams, the fireman, were on the train, and it did not identify either of them as being present or in any way connected with the wreck. For that reason the trial court, upon the evidence in behalf of the plaintiff as it then stood, should have sustained the motion as to these two defendants. The court, however, overruled the motion as to all defendants. Instead of relying upon the motion, the defendants proceeded with the introduction of evidence in their behalf, and this evidence established the identity and the presence of Van Lear, as the engineer, and of Williams, as the fireman, and that they were operating the engine at the time of the collision. By proceeding with the trial and introducing evidence in their behalf, the defendants waived the benefit of their motion and their exception to the action of the trial court on that point. *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Morgan* v. *American Central Insurance Co.,* 80 W. Va. 1, 92 S. E. 84; *Fuller* v. *Margaret Mining Company,* 64 W. Va. 437, 63 S. E. 206. In *Morgan* v. *American Central Insurance Co.,* 80 W. Va. 1, 92 S. E. 84, this Court said, on that point: "Defendant waived the error, if such it was, by thereafter introducing evidence on its behalf. This rule has been so frequently announced by this Court that a citation of cases is unnecessary to sustain this holding."

As heretofore stated, the conflict in the evidence turns upon the issues of fact which arose under the five counts which charged negligence by the defendants in the operation of the train. Particularly upon the questions whether the bell was rung and the whistle blown, in timely manner, and whether the lights were burning, the material facts are in dispute. There is substantial evidence in support of the respective contentions of the plaintiff and of the defendants upon those issues of fact. From the evidence the jury could have found for either the plaintiff or the defendants upon the question of negligence upon the part of the defendants. In such circumstances, the question of negligence is for the jury. *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Chambers* v. *Princeton Power Company,* 93 W. Va. 598, 117

S. E. 480; *Walters* v. *Appalachian Power Co.,* 75 W. Va. 676, 84 S. E. 617; *Ewing* v. *Lanark Fuel Company,* 65 W. Va. 726, 65 S. E. 200. It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses regarding them is in conflict; and the finding of the jury on such facts should not be disturbed by the court. *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorne* v. *Addison Bros. & Smith,* 119 W. Va. 479, 194 S. E. 771. Upon the conflicting facts the jury has found for the plaintiff on the question of the primary negligence of the defendants, and the finding on that issue can not be successfully challenged by the defendants in this Court.

The defendants vigorously insist that, under the evidence, the plaintiff's decedent, Virgil Ray Gilkerson, failed to exercise ordinary care for his own safety, in a dangerous situation, that his failure so to do constitutes contributory negligence which bars any recovery in this action, and that the question of such contributory negligence is one of law for the court.

The evidence of the two survivors of this sad and terrible tragedy who testified at the trial, Frank Smith, Jr., and Lory B. Hatten, is that the occupants of the automobile, including Virgil Ray Gilkerson, as it approached the fatal crossing, were looking straight ahead. This testimony is not disputed or countered by any evidence to the contrary. If the plaintiff's decedent, and the other occupants of the automobile, merely looked straight ahead, in the direction it was traveling, toward the crossing, they did not, of necessity, look up or down the railroad tracks in either direction, as it was their duty under the law to do. None of the occupants of the automobile made any protest or uttered any complaint against the action of the driver, Orville Hall, in going upon the crossing without stopping the automobile, or checking its speed of ten to fifteen miles per hour, to look or listen for the train. Though they had crossed the railroad tracks at this same crossing only a few

minutes earlier, while traveling north instead of south, as they were doing at the time of the wreck, and they knew of the existence of the railroad tracks, none of them did anything to detect the presence of the oncoming train, the headlight of which, though dim, was burning and cast its light for a distance ahead of 65 feet, according to a witness for the plaintiff, or to warn the driver of the automobile of the approach and the nearness of the engine. Though the negligence of the driver of the automobile can not be imputed to Virgil Ray Gilkerson, who was a guest of the driver, *Parsons* v. *The New York Central Railroad Company*, 127 W. Va. 619, 34 S. E. 2d 334; *Jameson* v. *Norfolk & W. Ry. Co.*, 97 W. Va. 119, 124 S. E. 491, this recognized principle of law did not relieve young Gilkerson of his plain duty to exercise due care for his own safety. *Jackson* v. *The Chesapeake & Ohio Railway Company*, 110 W. Va. 568, 159 S. E. 517; *Jameson* v. *Norfolk & W. Ry. Co.*, 97 W. Va. 119, 124 S. E. 491. If he had looked or listened, he would or should have seen or heard the approaching train in ample time to have warned the driver and enabled him to stop the automobile in time to have prevented the collision. When the automobile, in which he was riding as a guest, had reached a point within at least 72.5 feet north of the north rail of the railroad, the view to the west, in the direction of the oncoming train, was, under the uncontradicted evidence, free and unobstructed for a distance of at least 1,500 feet, and the night was clear and cold. Though his own safety was involved, the undisputed evidence shows that Virgil Ray Gilkerson did nothing to safeguard himself against injury or death. Although the occupant of an automobile, not the driver, in attempting to cross a railroad crossing, in the absence of evidence of his conduct, will be presumed to have exercised ordinary care, his safety being involved, *Waller* v. *Norfolk & Western Railway Company*, 108 W. Va. 576, 152 S. E. 13, when the disputed evidence indicates that such occupant could have seen or heard the approaching train, if he had looked or listened, and did not do so, the presumption is rebutted. *Jackson* v. *The Chesapeake & Ohio Railway Company*, 110 W. Va. 568, 159 S. E. 517.

Here the evidence, undisputed and undenied, shows that Virgil Ray Gilkerson, in a dangerous situation, the character of which he must have known, did nothing to prevent the collision or to protect his life, and his failure to take any precaution to avoid the collision establishes negligence upon his part which directly contributed to his injury and death. In such circumstances there can be no recovery in his behalf. *Waller* v. *Norfolk & Western Railway Company*, 108 W. Va. 576, 152 S. E. 13. When the evidence is not disputed and reasonable men can draw but one conclusion from it, the question of contributory negligence is one of law for the court. *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Jackson* v. *The Chesapeake & Ohio Railway Company*, 110 W. Va. 568, 159 S. E. 517; *McLeod* v. *Charleston Laundry Company*, 106 W. Va. 361, 145 S. E. 756.

The decision of this case, upon the controlling question whether Virgil Ray Gilkerson was guilty of contributory negligence, is governed by the principle just stated. The trial court should have sustained the motion of the defendants, made at the conclusion of the evidence, to direct a verdict in their favor. The refusal of the trial court so to do, and its later action, in refusing to give instruction No. 1, offered by the defendants, which would have directed the jury to return a verdict for the defendants, and in refusing to sustain the motion of the defendants to set aside the verdict and grant them a new trial, constitute reversible error.

The plaintiff cites and relies upon the cases of *Arrowood* v. *Norfolk & Western Railway Company*, 127 W. Va. 310, 32 S. E. 2d 634, and *Parsons* v. *The New York Central Railroad Company*, 127 W. Va. 619, 34 S. E. 2d 334, recently decided by this Court, in support of his contention that the question of contributory negligence was one for the determination of the jury in this case. In the *Arrowood* case, the evidence did not describe or disclose the conduct of the plaintiff's decedent or show negligence on his part, while attempting to cross the railroad crossing at which he was killed when the taxi-

cab, which he was driving, was struck by a train of the defendant. In the situation, shown to exist in that case, recognition was given to the rule which gives rise to the presumption that the deceased exercised due care for his own safety, and it was held that the question of contributory negligence was for the jury. In the *Parsons* case, the evidence disclosed that the plaintiff, who was occupying a position near the driver of the truck in which the plaintiff was riding as a guest at the time it was struck upon a railroad crossing by a train of the defendant which resulted in his injuries, leaned backward to afford the driver a clear view. As such conduct produced a condition as to which reasonable men could draw different conclusions whether the plaintiff exercised reasonable care for his own safety, this Court refused to hold that the question of contributory negligence was a question of law for the court. The marked difference in the facts and the circumstances disclosed by the evidence in those cases from the situation which appears here, readily distinguishes them from this case.

The action of the trial court in giving certain instructions offered by the plaintiff, and in refusing to give certain instructions requested by the defendants, remains to be considered.

Instruction No. 3, given at the instance of the plaintiff, was based upon the theory that the defendant, Baltimore and Ohio Railroad Company, was liable for its failure to comply with the requirement of the city ordinance that it install the warning device specified by the ordinance, under the seventh count in the amended declaration. As that count was defective, and the demurrer to it should have been sustained and evidence on that issue excluded, the instruction should have been refused. The action of the trial court in giving it was erroneous.

Instruction No. 4, offered by the plaintiff, correctly states the law and was properly given. The same comment applies to instruction No. 6 and to instruction No. 7, requested by the plaintiff and given by the court. Instruction No. 8, also offered by the plaintiff, was not

objected to, and no specific grounds of objection were assigned, by the defendants, as required by Rule VI (e) of the Rules of Practice and Procedure for trial courts of this State promulgated by this Court, effective April 10, 1936, 116 W. Va. LXII. For that reason this instruction can not be considered by this Court.

Disposition has already been made of the error assigned in the action of the trial court in refusing to give instruction No. 1, requested by the defendants, which instruction would have directed the jury to find for the defendants. Instructions Nos. 8, 9 and 10, offered by the defendant, fail to measure the conduct of the deceased, recited in each instruction, by the standard of reasonable care upon his part and for that reason each of these instructions was properly refused. Instruction No. 12, asked for by the defendants, incorrectly states the law in omitting any reference to qualifying facts and circumstances shown by the evidence, and the action of the trial court in refusing to give it did not constitute error.

Instruction No. 13, requested by the defendants, would have told the jury that although the evidence upon the issues whether the whistle was blown or the bell rung at the Burlington Road crossing was conflicting, yet if there was affirmative testimony that these duties were performed by the defendants and only negative testimony by witnesses who did not hear the whistle blown or the bell rung, the affirmative evidence should overcome the negative evidence. This instruction omitted any reference to the testimony of witnesses who stated, without qualification, that the whistle did not blow and that the bell did not ring. Because of such omission the instruction was misleading and would have tended to confuse the jury. The evidence in this case was not limited to the character of the evidence under consideration in the case of *Cavendish* v. *Chesapeake & Ohio Ry. Co.*, 95 W. Va. 490, 121 S. E. 498, where it appeared that the comparison was between witnesses who simply stated that they did not hear any signal given, and the positive affirmative testimony of at least four witnesses that they heard the signals. In that case this Court regarded the

statements of the witnesses that they did not hear the signals as purely negative and of very little weight in comparison with the statements of positive evidence of witnesses who testified that they did hear the signals, and expressed the view that there was no actual conflict in the evidence. In the opinion in the *Cavendish* case, however, it is stated that when a witness says that a signal was not given, and that he was listening for it for some reason and did not hear it, his testimony is entitled to as much credence as is the testimony of one who says that it was given. This statement accords with the evidence in the case at bar and is in harmony with the rulings of this Court upon the character and the effect of such evidence in the cases of *Carnefix* v. *Kanawha & Michigan Railroad Co.*, 73 W. Va. 534, 82 S. E. 219, and *Parsons* v. *The New York Central Railroad Company*, 127 W. Va. 619, 34 S. E. 2d 334. The instruction was properly refused.

Instruction No. 14A, offered by the defendants, contained an incorrect and incomplete statement of law, and, for this reason, was properly refused. Instruction No. 15, offered by the defendants, incorrectly stated the standard of credibility by which the jury should deal with and appraise the evidence, and the action of the court in refusing it was proper. Moreover, the proper portion of that instruction was embodied in Instruction No. 16, requested by the defendants, which was given. The duplication of instructions is unnecessary and undesirable. *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745.

Because of the errors committed by the trial court, in the particulars heretofore noted in this opinion, the judgment is reversed, the verdict is set aside, and a new trial is awarded the defendants.

*Reversed and remanded.*