HENRY A. GILKERSON, *Admr.*

*v.*

BALTIMORE & OHIO RAILROAD CO., *et al.*

(No. 10026)

Submitted September 22, 1948.   Decided

December 7, 1948.

HAYMOND and Fox, JUDGES, dissenting.

*George S. Wallace,* for plaintiffs in error.

*Lilly & Lilly, A. A. Lilly, R. G. Lilly,* and *W. R. Price,* for defendant in error.

KENNA, JUDGE:

This writ of error was granted to the second judgment of the Circuit Court of Wayne County in an action of death by wrongful act brought by Henry A. Gilkerson, administrator of the estate of Virgil Ray Gilkerson, deceased, against Baltimore & Ohio Railroad Company, C. J. Williams and E. B. Van Lear, the defendants below having been the plaintiffs in error in the former submission to this Court. The opinion in the former review stating the reasons for reversing the first judgment of the court below will be found by referring to *Gilkerson v. Baltimore & Ohio Railroad Company,* 129 W.Va. 649, 41 S.E. 2d 188. The defendants below are the plaintiffs in error now.

The assignments of error, including subdivisions, are twelve in number, but upon their examination we have concluded that only four present questions not dealt with and decided upon the former record, counsel being agreed that with the exception of the witnesses Frank Smith, Jr., and Lory B. Hatten, whose testimony will be discussed hereafter, the evidence now before the Court is substantially the same as in the first trial. Therefore, the scope of this review is limited by the generally recognized principle known as "the law of the case", for a general discussion of which under like circum-

stances see *Baltimore & Ohio Railroad Company v. Deneen,* 167 F. 2d 799.

On the night of Friday, January 7, 1944, plaintiff's decedent and six other young men who lived in Wayne County, returned from Catlettsburg, Kentucky where they had been attending basket-ball games, in an automobile driven and owned by Orville Hall. On their way back they stopped at Ceredo and, not finding the food they wished, continued to travel east on U. S. Route No. 60 toward their home with the plan of stopping at a place called "Maple Grove Inn" for sandwiches.

The road on which they were driving east or up the Ohio River was U. S. Route 60, locally called Piedmont Road, and was on the south or hill side of the Baltimore & Ohio Railroad tracks. Maple Grove Inn is on the north or river side of the railroad company's tracks. In going there the car in which the plaintiff's decedent was riding had to make a right angle turn to its left, go north and cross the tracks of the B. & O. Railroad Company on Burlington Road. Burlington Road is made of concrete twenty feet wide and is frequently used both night and day.

At Maple Grove Inn the young men were confronted by a cover charge which they did not wish to pay so that a few minutes after eleven o'clock they started back toward U. S. Route 60 or Piedmont Road, traveling south or toward the hill on Burlington Road and intending to cross the tracks of the Baltimore & Ohio Railroad Company in order to reach the main highway. As they were crossing those tracks their automobile was struck by an eastbound Baltimore & Ohio passenger train traveling on schedule. For a full general statement of facts see this Court's former opinion.

The plaintiffs in error, defendants below, complain because the trial judge declined to give their instruction No. 1-A which would have directed the jury to find for

the defendants on counts 1, 2 and 3 of the plaintiff's declaration. Although similar questions are usually raised by motion, of course they can be reached by instruction. However, assuming that there was insufficient evidence to support a verdict if based upon any of the counts under attack, the case was submitted to the jury under the remaining four counts of the declaration, three of which this Court has held good at the former hearing so that the verdict for the plaintiff is fully supported by an adequate pleading. Therefore, we do not see a way in which the defendants could have been prejudiced by the refusal of the instruction. A kindred question arising upon demurrer was discussed in our former opinion in this case. Furthermore, to instruct a jury to return a verdict for the defendants on three counts, when a general verdict for plaintiff is a possibility, instead of merely directing the jury to disregard the counts in question, we believe would have had a tendency to result in confusion. We are of opinion that the trial court committed no prejudicial error in declining the instruction.

Another assignment of error not covered in the former review is the refusal of the trial court to submit to the jury four special interrogatories submitted by the defendants. The interrogatories have been carefully examined and although their length makes a detailed discussion out of proportion to their importance, we are of the opinion that no one of them could perforce affect the jury's verdict and consequently their refusal by the trial court was not error. *Bartlett v. Mitchell,* 113 W.Va. 465, 168 S. E. 662.

Counsel for the defendants contend that it was error to refuse the admission of the entire transcript of the testimony to Frank Smith, Jr., and Lory B. Hatten at the former trial due to a stipulation thereafter entered into between counsel for the plaintiff and the defendants, the material wording of which is as follows:

> "In order to save the cost of taking depositions to perpetuate the testimony of any one or all of the witnesses who testified in the aforementioned suit, it is agreed that either party to each of the above captioned cases may use the testimony of any witness given in the case of Henry A. Gilkerson, Administrator of the estate of Virgil Ray Gilkerson, deceased, in the subsequent trial of said case, or in the trial of any one or all of the above captioned cases."

Smith and Hatten were the only available survivors of the accident. Four were killed and Frank McComas was in the United States Army at the time of trial. In its former opinion this Court had this to say concerning the testimony of these witnesses:

> "The evidence of the two survivors of this sad and terrible tragedy who testified at the trial, Frank Smith, Jr., and Lory B. Hatten, is that the occupants of the automobile, including Virgil Ray Gilkerson, as it approached the fatal crossing, were looking straight ahead."

As we understand, the principal purpose of offering the transcripts was to contradict the testimony of Smith at this trial, and to introduce the testimony of Hatten, who did not testify in this trial, in the former trial to support that contradiction.

At the former trial on his examination in chief Smith had this to say concerning the direction in which the other passengers of the car were looking immediately before the collision:

(The references are to the pages of the printed record upon the former review of the case in this Court.)

"Q. Do you know in what direction Hall was looking as he approached the crossing?

"Col. Wallace: Objection. This man was sitting in the back seat.

"The Court: Do you know in what direction he was looking?

"A. I am pretty sure he was looking right straight ahead.

"Objection overruled; exception.

"By Mr. Lilly:

"Q. In what direction were you looking?

"A. Straight ahead, myself.

"Q. Do you know about the other people in the car as to what direction they were looking?

"A. No, sir, I do not."
(Page 179 of the former printed record)

His last answer, of course, included Virgil Ray Gilkerson and is exactly the same as his present testimony.

On cross-examination he said this:

"Q. What was Virgil Gilkerson doing?

"A. *As far as I know* he was sitting there looking straight ahead. (Italics supplied.)

"Q. Were you in a position to see what he did and hear what he said, everything he said?

"A. I didn't hear it if he said anything.

"Q. Did you hear him say anything?

"A. No, sir.

"Q. You didn't see him do anything but look ahead?

"A.   I saw him looking ahead."
  (Pages 184, 185 of the former printed record)

In his examination in chief Hatten had this to say:

"Q.   Do you know in which direction the occupants
      were looking as you approached the crossing at
      the time the car was struck by the train?

"A.   As far as I know they were looking straight
      ahead."

  (Page 190 of the former printed record)

On cross-examination he replied to a question as follows:

"Q.   In what direction was Virgil Ray Gilkerson look-
      ing?

"A.   Forward."
  (Page 194 of the former printed record)

The foregoing is all that these witnesses testified concerning the direction in which Virgil Ray Gilkerson was looking immediately before the accident.

Hatten was summoned by the plaintiff and was present in the court room during the trial and available as a witness to either side. He was not called. Smith was present and was placed upon the stand by the plaintiff and subjected to cross-examination by the defendants' counsel, using the transcript of his former testimony continually as an effort to show contradiction, the credibility of course being for the jury. It is of course to be remembered that the time was about eleven-twenty on a dark night and that these two witnesses, each seventeen years of age, were being questioned concerning the exact physical position of six other passengers a few seconds before the car was wrecked, killing four of its

occupants. Smith was looking "straight ahead," making it impossible for him to have known in what direction plaintiff's decedent was looking because decedent was seated diagonally behind him. That is the background for such confusion as exists in their statements.

Trial courts look favorably upon stipulations the effect of which is generally to simplify litigation. For this reason they are not generally construed rigidly but are looked upon in order to carry out their actual purpose. For this reason where a stipulation appears to have been inadvertently or under a misapprehension entered into courts occasionally relieve the parties concerned from their effect. *Cole v. State Compensation Commissioner,* 114 W.Va. 633, 173 S. E. 263. See also 50 Am. Jur. 609, 612, 613, and Ann. Cas. 1912 C 769. The stipulation confronting the court in this matter states its purpose quite plainly. It was made: "In order to save the cost of taking depositions to perpetuate the testimony of any one or all of the witnesses who testified in the aforementioned suit, *ᴵ * *". The perpetuation of the testimony of available witnesses, particularly witnesses actually present in the court room during the trial of a case, as here, is entirely unnecessary. Consequently in carrying out the stated purpose of the stipulation we do not believe that counsel had the unlimited right to introduce the transcript of the testimony at the former trial. Furthermore, we are of the opinion that a stipulation entered into between counsel which materially affects the conduct of litigation, the relevancy of testimony, the number of witnesses used, and the time to be consumed in trying the matter, are entered into subject to the consent of the judge of the court involved. Certainly counsel could not stipulate, for example, that a quantity of hearsay could be admitted in opposition to the trial judge's attitude. For the reasons stated we see no error in the holding of the Circuit Court of Wayne County on this assignment of error.

The remaining assignment of error that we think was not considered in the former review of this case has to do with improper comment made by counsel for the plaintiff in the closing argument. The comments had to do with the testimony of the employees of the railroad company and were to the effect that it was to be expected that they would testify in the interests of the defendant in order to hold their positions and their rights of seniority. The comments were objected to by counsel for the defendant and the objection was sustained. There was no suggestion by counsel for defendant that counsel be admonished nor the jury cautioned to disregard the comments of counsel and neither took place. Counsel for plaintiff in error now takes the position that the failure to admonish pursuant to his sustained objection only, was error. While we entirely disapprove of comments of this nature, particularly when made by experienced counsel, we cannot say that it is prejudicial error for a trial judge not to voluntarily admonish the offending lawyer particularly when the question arises upon an objection of counsel not accompanied by a suggestion of an admonition. For a trial judge to voluntarily elaborate or enlarge the effect of a sustained objection could very easily be looked upon as unduly favoring the side objecting. Sustaining the objection showed plainly that as a matter of law he regarded the statements of counsel as improper. To voluntarily go beyond that in our opinion is subject to the sound discretion of the trial court and in this instance we see no abuse of that discretion.

Being of the opinion that there is no prejudicial error covered by the assignments upon this review, the judgment of the Circuit Court of Wayne County is affirmed.

*Affirmed.*

HAYMOND, JUDGE, dissenting:

I dissent from the decision of the Court in this case to the extent that it affirms the action of the trial court, at the second trial of this action, in permitting the

written stipulation entered into between the attorneys for the respective parties to be disregarded and, in consequence, denying the right of the defendants, under the stipulation, to introduce as evidence at the trial the testimony given by Lory B. Hatten, as a witness in behalf of the plaintiff, upon the first trial of this action. The first trial resulted in a judgment for the plaintiff in the sum of $10,000.00 which, on writ of error, was reversed by this Court on the sole ground that the undisputed testimony of Hatten and Smith, another witness for the plaintiff at that trial, established, as a matter of law, contributory negligence upon the part of plaintiff's decedent which precluded any recovery in the case. *Gilkerson v. Baltimore & Ohio Railroad Company,* 129 W.Va. 649, 41 S. E. 2d 188.

The material facts in this case are set forth in detail in the opinion of this Court in reversing the judgment entered by the circuit court upon the first trial and need not be repeated or discussed at length in this dissent. In that respect it is sufficient to say that, as they appear from the record, they are, in substance, the same upon each trial, except those shown by the testimony of Smith which was entirely different on the issue of contributory negligence of the decedent, Virgil Ray Gilkerson, from that given by him at the first trial, as appears from the opinion of the Court upon this writ of error, and those shown by the testimony of Hatten at the first trial, which testimony, though offered by the defendants under the stipulation, was not admitted by the court upon the second trial.

As already pointed out in the opinion of the majority, Smith and Hatten, two of the three survivors of the fatal wreck, were witnesses in behalf of the plaintiff at the first trial. They were riding in the rear seat of the automobile with Virgil Ray Gilkerson at the time of the collision which resulted in his death. Each of these witnesses is a plaintiff in separate actions which were pending at the time of the first trial to recover

damages from the same defendants for injuries caused in the same collision, and each of these witnesses testified positively, and without contradiction, at the first trial, that Virgil Ray Gilkerson, as the automobile in which he was riding in the rear seat approached the crossing, was looking "straight ahead." At the second trial, Smith was again offered as a witness for the plaintiff and, for no justifiable reason but for the apparent purpose of overcoming the disastrous result of his former testimony, changed his testimony given at the first trial, in which he swore that Gilkerson was looking "straight ahead," to testimony in which he swore that he did not know in which direction Gilkerson was looking immediately before the collision. The jury believed this second version, but that does not justify or condone the conduct of this witness or remove the grave suspicion of the falsity of his altered testimony. By this highly questionable means the plaintiff was able to introduce uncontradicted evidence from which a jury could properly infer that Virgil Ray Gilkerson was not guilty of contributory negligence and, by the introduction of Smith's new and different narrative and the omission of the former testimony of Hatten, Smith's first version, which, without contradiction, convicted Gilkerson of contributory negligence, was eliminated from the evidence in the case.

This surprising and substantial change of testimony can not pass unnoticed and, though the question of the credibility of Smith's testimony was of course for the jury, who believed his new story, the surrounding circumstances indicate to me that one or the other of his two clearly conflicting versions was dishonest and not due to confusion or mistake.

After Smith had changed his former testimony the plaintiff, who had subpoenaed Hatten and caused his presence during the trial, did not offer him as a witness. This attitude of the plaintiff would seem to have been prompted by one of two rather obvious reasons: either

Hatten would not change his former testimony, if produced by the plaintiff, and would contradict the new and different evidence given by Smith in behalf of the plaintiff, or, if Hatten intended to change his original version, the plaintiff expected, and by that course hoped to force, the defendants to use him as their witness and in that way introduce, as defense evidence favorable to the plaintiff, Hatten's changed testimony. The defendants declined to follow this course and instead relied upon the stipulation in an effort to introduce Hatten's known original testimony by offering it as shown by the record in the first trial.

Whatever may have been the reason for the stipulation entered into between counsel, as recited in its preamble, the clear agreement in the stipulation was to admit the evidence of any witness who had testified at the first trial, and the terms of the agreement are without qualification with respect to the presence of a witness who had previously testified. The language of that part of the stipulation which is clear and comprehensive is: "* * * it is agreed that either party to each of the above captioned cases may use the testimony of any witness given in the case of Henry A. Gilkerson, Administrator of the estate of Virgil Ray Gilkerson, deceased, in the subsequent trial of said case, or in the trial of any one or all of the above captioned cases." Of course without the stipulation the former testimony of Hatten would not be admissible if he was present or available to testify in person at the second trial of the case. This is a familiar rule of evidence. By virtue of the stipulation, however, upon which the defendants relied, they were entitled, in view of the unexpected situation which resulted from the unusual attitude of the plaintiff with respect to Hatten, to introduce Hatten's former testimony even though he was personally present and available as a witness. In the circumstances, I do not think the defendants should have been forced to risk a probable change of testimony by Hatten and, in the face of that obvious hazard, to offer him as their witness. His pre-

vious testimony, after Smith had changed his story, was the only evidence available to the defendants in support of their defense of contributory negligence upon the part of Virgil Ray Gilkerson. It would have presented a conflict in the evidence upon that issue. It was material in that respect and would have disclosed to the jury the identical facts which, undisputed, caused this Court, on that single issue, to reverse the judgment rendered at the first trial. As a result of the foregoing unusual and unexpected circumstances the judgment entered by the trial court, after the defendants had been denied the right to submit to the jury the evidence given by Hatten in the first trial, is affirmed by this Court because of the absence of the original testimony of Smith and Hatten which established, at the first trial, uncontradicted facts with reference to the issue of contributory negligence of Virgil Ray Gilkerson.

Though a trial court may control and direct, in the exercise of its discretion, the use of a stipulation between the parties or their counsel, it should never exercise that discretion in a manner which results in prejudice to any right of a party. I think its action, in this case, in refusing to give effect to the stipulation, was prejudicial to the right of the defendants. The consequence is a final judgment which, on the controlling issue of contributory negligence, is supported by evidence of such uncertain character that it appears extremely doubtful if it is based upon truth and justice. When a situation of that kind develops, as I believe it does here, this Court has both the power and the duty to set aside the verdict and reverse the judgment. It should not passively view the obviously studied and deliberate act of one of the only two eye witnesses, in materially changing, at the second trial, his prior testimony upon a controlling issue and the clearly designed refusal of the plaintiff to offer the other eye witness as a witness, when such conduct produces or contributes to a verdict for the plaintiff, when all the other evidence is substantially the same in both trials, and when that evidence

and the omitted original testimony of those two witnesses resulted in a similar verdict at the former trial which was set aside by this Court because of the effect of their original testimony. To say that this Court must accept and approve the second verdict rendered in such circumstances amounts to a denial of its essential power to require and enforce right and justice in any and every case.

The inherent power of a court to set aside a stipulation entered into between attorneys for the parties should not be exercised in a manner which operates prejudicially to the right of any party to the stipulation. "Valid stipulations which have been acted upon so that the parties cannot be placed in statu quo will be enforced unless some good cause is shown for refusal to do so." 50 Am. Jur., Stipulations, Section 12. A stipulation, fairly made, will not be set aside when such action will likely result in a serious injury to a party. 50 Am. Jur., Stipulations, Section 14. Stipulations fairly and voluntarily entered into between lawyers representing the litigants in a case should be scrupulously kept and performed. They should not be circumvented or violated to the prejudice of those to whom they were intended to apply, and, as a general rule, they ought to be recognized and enforced by the court in which they were made and filed. In *Cole v. State Compensation Commissioner,* 114 W.Va. 633, 173 S. E. 263, cited in the opinion of the majority, this Court held that a stipulation may be set aside at the request of one of the parties when entered into through improvidence, if both parties can be restored to the same condition that existed when the agreement was made. The rule of that case, however, has no present application, because the stipulation here involved was not entered into improvidently, and the action of the trial court in disregarding it produced a detrimental change in the original position of the defendants and deprived them of a fair opportunity to introduce the evidence which, without contradiction, this Court considered decisive of a controlling issue in the case upon the first trial of this

action. It is manifest that counsel for the defendants did not expect, or have reason to believe, that Smith would change his former testimony, or that the plaintiff would not offer Hatten, the only other available eye witness, as a witness, until those surprising and unusual events occurred during the second trial. In that situation I think the defendants were entitled to rely upon and have the benefit of the stipulation which was fairly entered into between the parties by their attorneys; and the refusal of the trial court to recognize their right in that respect was prejudicial and constituted reversible error. For that reason I would reverse the judgment and award the defendants a new trial.

I am authorized to say that Judge Fox concurs in this dissent.