# CHARLESTON.

NIMROD T. FREEMAN *v.* MONONGAHELA VALLEY TRACTION COMPANY *et al.*

(No. 4981.)

Submitted May 21, 1924.        Decided November 11, 1924.

1. APPEAL AND ERROR—*Overruling of Demurrer to Declaration Having one Good and one Bad Count, Held Not Ground for Reversal of Judgment on General Verdict.*

   In an action for wrongful injury, if one of the two counts in the declaration be good, the other bad, even though there be a demurrer to the declaration and to each count thereof, and said demurrer is improperly overruled by the trial court, a general verdict giving entire damages will be good, and does not constitute grounds for reversal by this court. Code section 13, chapter 131. (p. 315).

   (Appeal and Error, 4 C. J. §§2905, 3196 [1926 Anno.])

2. TRIAL—*Whether Positive and Negative Testimony is Conflicting so as to Require Submission to Jury, Depends on Whether Negative Testimony has Probative Value; Negative*

*Testimony that Crossing Signals Were Not Heard as Against Preponderance of Positive Evidence that Signals Were Given, Does not Make Question for Jury.*

Whether a conflict arises between negative and positive testimony depends upon the facts and circumstances of each particular case from which it may be determined whether the negative testimony has any probative value. As a general rule, a conflict in the evidence does not arise such as to require submission to the jury of the question whether signals were given for a crossing, where there is a preponderance of positive testimony that the signals were given, as against purely negative testimony that the signals were not heard. For the reason that the evidence of those who did not hear is not in conflict with the evidence of those who did hear. (p. 318).

(Railroads, 33 Cyc. p. 1104; Trial, 38 Cyc. p. 1537.)

3.  SAME—*Instruction Failing to Refer to Contributory Negligence Erroneous and not Cured by Others.*

Where, in an action for wrongful injury, the defendant relies upon the contributory negligence of the plaintiff as being the proximate cause of the injury, a hypothetical instruction directing a finding for plaintiff, which does not embody a reference to the facts tending to establish contributory negligence, and wholly omits any reference to such defense, is reversible error; and the error is not cured by giving other instructions either for or against the defendant. (p. 321.)

(Trial, 38 Cyc., p. 1787.)

4.  RAILROADS—*Last Clear Chance Doctrine Stated; Liability Under Last Clear Chance Doctrine for Jury.*

The duty imposed upon a motorman on an interurban electric railway, under the last clear chance doctrine, is to use ordinary care to discover a traveler upon a public crossing, and after discovering him to use like care to avoid injuring him. Failure to perform either duty is actionable negligence, and if from the evidence there is a doubt as to whether he did use such care, then the question is for the jury. (p. 320).

(Railroads, 33 Cyc., pp. 961, 978, 1105.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Harrison County.

Action by Nimrod T. Freeman against the Monongahela Valley Traction Company and another. Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside; remanded.*

98 W. Va.

*Steptoe & Johnson,* for plaintiffs in error.

*E. G. Smith, David D. Johnson* and *Frank C. Fisher,* for defendant in error.

McGINNIS, JUDGE:

This action is in trespass on the case, brought by the plaintiff, Nimrod T. Freeman, against the Monongahela Valley Traction Company, and William Musgrave, a motorman for the said Company, for $10,000.00 damages to his automobile and alleged personal injuries.

The declaration consists of two counts. The first count is predicated upon the negligence of the said company for failing to provide gates, a watchman, flagman, gong or electric bell at the crossing to warn persons traveling upon and over said crossing of the danger of approaching cars; and that the defendants so carelessly, negligently and improperly operated the interurban car as to cause the damage to plaintiff complained of. The second count charges the defendants with negligence in that the interurban car was run at an unlawful and excessive rate of speed; and that the defendants failed to give such warning signals as is required of them by law.

The defendant demurred to the declaration and to each count thereof, which said demurrers were overruled by the court, whereupon the defendants pleaded the general issue. A trial was had which resulted in a verdict and judgment for the plaintiff in the amount of $1,000.00; and the case is now before this court on a writ of error.

The facts shown by the evidence so far as they are material to the disposition of the errors assigned, are that the plaintiff and his brother had been rabbit hunting and were on their way, in an Overland automobile owned and driven by the plaintiff, to the town of Jane Lew to sell some rabbits and to buy some ammunition. It appears that the collision occurred at Beeghley Crossing. This crossing is about one thousand feet south of the interurban station at Jane

Lew, and about 440 feet south of the Company's whistling post at Hackers Creek Bridge, and is "Blind Crossing," so called because the county road and the track of the defendant Company intersect at almost right angles, and each lie in deep cuts, the county road for a distance of 260 feet and the railway for a distance of 400 feet from the point of intersection, and because of these cuts it is impossible for a traveler upon the highway to see an approaching interurban car until he arrives at a point a short distance from the crossing, nor can the motorman on an interurban car see an approaching vehicle on the county road until he arrives within a short distance therefrom. The testimony of the plaintiff and his brother shows that when they entered the cut in the county road above described, they were driving the automobile at the rate of 8 to 10 miles per hour, and that this rate of speed was maintained until they were within 15 or twenty feet of the crossing, and that at this point the speed of the automobile was reduced to 3 or 4 miles per hour, with the car in second gear; that within the said distance of 15 or 20 feet of the crossing the plaintiff begun to look and listen for an approaching interurban car, looking first in the direction of Jane Lew, the direction from which the car came which caused the injury, then in the direction of Clarksburg, then back again towards Jane Lew, and that by this time the front wheels of his automobile were on the track, and then he, for the first time became aware of the approach of the interurban car, and it was then only a distance of about 50 feet from him, and coming at a rapid rate of speed; that as above stated the car was in second gear, and that he threw on all the gas he could and although the engine responded fully and immediately to the accellerator he was unable to clear the track, and the interurban car struck the automobile just over the rear axle and dragged it and its two occupants a distance of 56 feet past the point of collision, practically destroying the automobile, and inflicting certain personal injuries upon the plaintiff from which he had not fully recovered at the time of trial although two years had elapsed since the collision. The plaintiff and seven other witnesses testified that if the

motorman sounded any signals for the crossing that they did not hear them, but none of them testified positively that the signals were not given. The speed of the interurban car was fixed by plaintiff's witnesses as being from 20 to 25 miles per hour.

For the defendant it was shown that the interurban car was running on schedule time, at a moderate rate of speed, along a perfectly straight track; that the motorman did not see the plaintiff until he was within 75 feet of him, and that he immediately applied the brakes and got the maximum results therefrom, but as the car weighed from 17 to 19 tons it was impossible to stop it in that distance. The defendant motorman, the conductor on the car, and eight other witnesses testified that the motorman gave the customary signals at the whistling post at Hackers Creek Bridge. Five of these witnesses were passengers on the interurban car and the other three were eye witnesses to the collision. It appears from the evidence that the track was perfectly straight from Hackers Creek Bridge to the said Beeghley Crossing.

The errors assigned and relied upon by defendants for reversal may now be considered.

The defendants, as stated, demurred to the declaration and to each count thereof and now insist it was error for the lower court to overrule said demurrer. This court is of the opinion that the demurrer should have been sustained as to the first count. Counsel for the plaintiff do not cite us authority, and from our own investigation we are unable to find where there is either a statutory of common law duty imposed upon an electric railway to provide and maintain gates, a flagman, watchman, gong or electric bell, at points where the tracks of the railway intersect and cross a public highway. There being no such duty imposed upon the company to provide them or either of them, it is manifest the failure of the Company to provide them would not be negligence. But assuming that the Company was negligent in this respect certainly it could not be contended that any such duty existed as to the defendant Musgrave, and in fact he is not charged in the declaration with negligence in this respect, and we therefore think the count is faulty and the

demurrer thereto should have been sustained. But the second count of the declaration is a good one and quite sufficient to support the verdict, and as the verdict is a general one, not based on any particular count, the existence of the faulty count, although the demurrer to it was improperly overruled, does not give grounds for reversal. At common law, if there was a general verdict for the plaintiff on a declaration containing several counts, one of which was faulty and entire damages were given it was deemed necessary to set the verdict aside, as the court could not tell upon which count the jury founded its verdict. But this rule of the common law has been changed by section 13 of chapter 131, Code, which follows: "When there are several counts one of which is faulty, the defendant may ask the court to instruct the jury to disregard it; yet if entire damages be given, the verdict shall be good." In the case of *Ray* v. *Chesapeake & Ohio Ry Co.*, 57 W. Va. 333, this section of the Code above quoted was construed by Judge BRANNON. It seems in this case, which was an action against the railway company for negligently running over and killing Annie Ray, that the declaration consisted of four counts, and the defendant demurred to the declaration and to each count thereof. The trial court overruled the demurrer, and the company upon a writ of error assigned it as reversible error. Judge BRANNON in his opinion at page 335 says: "If even I am wrong in saying that counts one and two are bad, as the third and fourth counts are good, the verdict being general, not on any particular count, the bad counts cannot reverse," quoting the section above.

This Beeghley Crossing as described in the evidence is an extremely dangerous one, and there was at the time of the accident in this case a mutual duty upon the part of both the plaintiff and defendant to use ordinary care and caution in approaching the same. It was the duty of the plaintiff to look and to listen, and to look from a point from which he could see the car of defendant for a sufficient distance from the crossing to insure his safety while attempting to cross. This duty he failed to perform. The point from which he first looked in the direction from which the car was com-

ing his view was obstructed, and he could see, as he says, for a distance of only 50 or 60 feet down the track in the direction from which the car was approaching the crossing, and at that point he did not use any precautionary measures but continued to move in the direction of the crossing, and he further says that when he got within eight feet of the crossing he could have seen to Hacker's Creek Bridge, a distance of 440 feet from the crossing, and it is evident the car was within that distance when he got to within eight feet of the crossing, and was in plain view had he looked, and from the evidence he could have stopped his car before he got on the track—at any rate he should have had his car under control so that he could have stopped when he got to the point where he could have seen the approaching car.  He was looking he says while he was listening; his car was in second gear going up grade and made some noise, now if that noise made by the automobile in any way interfered with his hearing the approaching car he should have stopped.  We think from the evidence the plaintiff was guilty of negligence which contributed to the injuries complained of.

On the other hand we are of the opinion that the defendants were guilty of negligence in the manner in which the car approached the crossing, considering this admittedly dangerous crossing.  The defendant's car should have approached the crossing in such a manner as to be under the control of the motorman to such an extent, that if necessary, he could have stopped the car before it reached the crossing. The fact that the car was not under control, and was coming at a high rate of speed before and at the time it reached the crossing, is evidenced by the fact that after the motorman first saw the plaintiff's automobile approaching the track, according to his own testimony, he applied the emergency brakes and the interurban car was then 75 feet from the crossing and notwithstanding the brakes responded perfectly and he got the maximum result therefrom the motorman was unable to stop the car until it had traveled a distance of 183 feet after the application of the brakes, this, we think, clearly shows that the car was not under such control as the circumstances of the case required.  The motor-

man, Musgrave, says the car ran 65 feet beyond the point of collision stopping with the rear end at the south end of the platform at Beeghley stop. He evidently meant that the rear end of the car was 65 feet from the point of collision. The testimony shows that the interurban car was 48 feet long. We note by the measurements from the scale on the map in evidence that from the center of the crossing to the south end of the said platform it is approximately 60 feet, and adding the distance from the crossing where the motorman said he first applied the emergency brakes, and the length of the car, we have 183 feet which is the distance the interurban car traveled after the brakes were applied. So for the reasons above stated the defendants were negligent, but notwithstanding the negligence of the defendants the plaintiff for that reason cannot recover because of his contributory negligence.

The question as to whether or not the defendants were negligent in that they did not sound a warning for the crossing may now be briefly disposed of. The plaintiff and his brother, who was with him at the time of the accident, as well as the other witnesses testifying in behalf of the plaintiff merely stated that if the whistle was blown they did not hear it. Not one of them stated positively that the whistle was not blown. The motorman, the conductor and eight other witnesses, five of whom were passengers the others being eye witnesses to the accident, testified positively that the whistle was blown. We do not think this negative testimony is of sufficient probative value to make the question one for the jury. This same question arose in the case of *Cavendish* v. *Chesapeake and Ohio Ry. Co.*, 95 W. Va. 490, 122 S. E. 498, point one of the syllabus is here quoted:

> "The fact that witnesses have heard signals given by a locomotive approaching a crossing, warning travelers of danger, is not necessarily in conflict with the evidence of other witnesses who did not hear them; for the observation of the fact by those who heard is consistent with the failure of the others to hear them."

So from all the facts and circumstances of this case, we apprehend that we may safely say that the signals required by law to be given were given, and the defendants were not negligent in this respect as charged in the declaration.

The defendants assign as error the courts refusal to submit to the jury certain interrogatories requested by them. These interrogatories are here set out:

(1) Did the plaintiff before starting across Beeghley Crossing look up the railroad track for the car coming southward from Jane Lew. If he did how far was he from the crossing when he first looked?

(2) Could the plaintiff hear the oncoming car while driving his automobile in second gear up the grade crossing?

(3) Did the motorman, Musgrave, blow the car whistle while approaching the crossing?

(4) At what speed did the interurban car approach the crossing?

(5) Could the motorman have avoided the collision after he discovered the plaintiff upon or approaching the track?

From a review of the case which declare the purpose of the statute which permits the submission of special interrogatories to the jury, it would seem that its object is to single out one or more of the controlling facts so that the existence or non-existence of this controlling fact or facts upon which the issue turns may be carefully and especially considered by the jury. Its purpose is to assist the jury in arriving at a correct verdict, and this being so, any interrogatory which fails to raise a material issue, and which would not be decisive of and control any verdict the jury might render only tends to confuse and make more obscure the real issues, and the trial court should refuse to submit any such interrogatory. We think the trial court properly exercised its discretion in refusing to submit the interrogatories asked for by the defendants, as any answer to either of them would not necessarily control the verdict, and so if the jury had answered all of them either in the affirmative or negative,

the answers would have been consistent with their verdict and therefore not decisive of the case.

The last point made by the defendants concerns the matter of the instructions. It is insisted by them that the trial court erred in giving plaintiff's instructions 2, 3, and 2nd alternative for 1. Defendants contend that this is not a proper case for the application of the doctrine of last clear chance, and the court therefore erred in giving plaintiff's instructions No. 2. The reason assigned is that the evidence shows the motorman could not possibly have avoided the accident, by stopping the car, after he became aware of the plaintiff's perilous position. The motorman, Musgrave, did testify that he applied the emergency brake immediately upon seeing the plaintiff but was unable to stop the car, so there was evidence to support the defendant's contention. However, Mr. McIntyre, a witness for the plaintiff testified that the application of the brakes and the crash came at the same time, thus tending to show that the motorman made no effort to stop the car until the collision occurred. While it may be true that it was impossible for the motorman to bring the car to a complete stop before the crossing was reached, yet we believe the jury would have been justified in coming to the conclusion that if the motorman had immediately applied the brakes upon discovering the plaintiff, the speed of the car could have been reduced sufficiently to allow the plaintiff ample time to clear the track. This question was purely one of fact for the jury, and as there was evidence upon which to base the instruction we feel the court was justified in giving it.

Plaintiff's 2nd alternative for No. 1 is here set out:

> "The court instructs the jury that it was the duty of the defendant to sound a warning sufficient, and at a proper place, and to continue to sound a warning for a time sufficient, the deep cuts considered, to give due notice to the plaintiff of the approach of the car which collided with plaintiff's automobile before the highway was reached, and if you believe from the evidence defendants neglected this duty, and that the plaintiff was injured and

damaged by reason of such neglect, then you should
find for the plaintiff such damages as he has sus-
tained.''

The court is of the opinion that this instruction is er-
roneous and constitutes grounds for reversal of the case.
There is a long line of West Virginia cases which are de-
disive of this point. The substance of these decisions is
this: that where the defendants rely upon contributory
negligence as a defense, a hypothetical instruction directing
a verdict for the plaintiff which entirely ignores the defense
of contributory negligence is fatally defective. This is so
because it excludes from the consideration of the jury the
very defense relied upon by the defendants, and it seems the
error is fatal although there are other instructions covering
the same point. The case of *McCreery's Adm'x v. Ohio River
Ry. Co.*, 43 W. Va. 110, is a leading case on this point. The
syllabus of this case is here quoted:

> "When the defense of contributory negligence
> is relied upon in defense of an action for wrongful
> injury or death, a hypothetical instruction direct-
> ing a finding in favor of the plaintiff, which omits
> any reference to the facts tending to establish con-
> tributory negligence, and entirely ignores such de-
> fense, is erroneous. Nor can such error be cured by
> other instructions given in behalf of either party."

The following cases are also in accord with the doctrine
just enunciated: *Wooddell v. Improvement Co.*, 38 W. Va.
23; *Culp v. Virginian Ry.*, 77 W. Va. 125; *Petry v. Coal Co.*,
77 W. Va. 654; *Stuck v. Ry. Co.*, 78 W. Va. 490; *Penix v.
Grafton*, 86 W. Va. 278; *Evans v. Kirson*, 88 W. Va. 343;
*Ewing v. Chapman*, 91 W. Va. 641; *Blackwood v. Mononga-
hela Valley Traction Co.*, 96 W. Va. 1.

Defendants insist the court's refusal to give their instruc-
tions Nos. 6 and 9 was error.

Defendant's instruction No. 6 is a binding instruction
and is predicated on the negligent failure of the defendants
to give the signals required by law, and tells the jury that

"Unless they believe from the evidence that the defendants negligently failed to blow the signal for Beeghley Crossing, and that such negligence was the direct and proximate cause of the accident, and the injuries claimed by the plaintiff then the jury should find for the defendant." This instruction excludes from the jury the two theories of the plaintiff; that the car was being run at an excessive rate of speed at the time of the collision, and the theory of the last clear chance. In other words it places undue emphasis upon the one act of negligence and fails to embody the other causes for recovery, there being appreciable evidence to support each of them.

> "A binding instruction is properly rejected which excludes the theory of one of the parties, and which the evidence tends in an appreciable degree to support." *Parkersburg & Marietta Land Co.* v. *Smith,* 76 W. Va. 246.

Instruction No. 9, offered by the defendant, was properly refused by the court. While we think the instruction embodies the law of the case, yet we feel the principles envolved therein are sufficiently covered by plaintiff's instruction No. 2.

> "It is not error to refuse instructions when the propositions of law embodied therein, though correct, are sufficiently covered by other instructions which have been given." *Richmond Traction Co.* v. *Williams,* 102 Va. 253.

For the reason above pointed out the judgment of the circuit court complained of will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed, verdict set aside; remanded.*