## CHARLESTON.

ELEANOR NILAND *v.* MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY *et al.*

(No. 5809)

Submitted September 25, 1928. Decided December 11, 1928.

*Victor H. Shaw,* for defendant in error.
*James A. Meredith* and *Ernest R. Bell,* for plaintiff in error.

LITZ, JUDGE:

The defendant, Monongahela West Penn Public Service Company, is aggrieved by the judgment of the circuit court rendered upon a verdict of $9,000.00 against it and the defendant, William E. Gregg, in favor of the plaintiff, Eleanor Niland, for personal injuries sustained by her in a collision between a motor work car, which it owned and operated over its electric railway, and·a Grant sedan automobile owned and operated by said William E. Gregg, in which the plaintiff was riding as his guest.

The accident occurred in the afternoon of August 2, 1924, on Fleming Crossing, the intersection of a state highway (the Country Club Road) and the electric railway of the public. service company near the city of Fairmont. The plaintiff (a young woman residing in Brownsville, Pennsylvania) was returning home by way of Clarksburg and Fairmont from an extended motor trip through Maryland, Virginia and West Virginia, in a Grant sedan automobile, owned and operated by William E. Gregg, and in which his daughter, Inez Gregg, was also riding. Michael Niland (brother of plaintiff) and several other friends and relatives, traveling in a Studebaker sedan automobile owned and operated by him, were also members of the party. The Studebaker car,. being in the lead, on reaching a junction of the Country Club road, and what is known as the Locust Avenue Route to Fairmont, about seventy-five feet from the crossing, turned left into the Locust Avenue route and stopped. After inquiring at a nearby garage the way to Fairmont, Michael Niland attempted to signal the driver of the Gregg car (then approaching) to stop.

Not observing the signal Gregg continued his course over the country club road, leading straight ahead, to the crossing where his automobile and the work car collided.

The road, in the direction the automobile traveled, was practically straight for 300 or 400 feet before reaching the crossing. A traveler, looking right and left along this course, could have seen, at intervals, portions of the railway track to the left and right. Between the fork of the road and the crossing to the right was a detour sign pointing to the Locust Avenue road, and to the left, ten and one-half feet from the improved surface of the road stood a signal pole supporting a ''Railroad Crossing'' sign (consisting of two parallel boards), several electric lights, and an electric bell which operated as cars approached over the railway track from a point of contact 722 feet from the crossing. To the left of the crossing was also a sign reading: ''Wait Death is so permanent.'' The bell, which is audible for one-fourth of a mile, was ringing from the time the work car reached the point of contact until after the collision. The road from Clarksburg to Fleming crossing intersects several times with the interurban line. In the direction of the crossing it ascends from a point 100 feet from the crossing to a point 20 feet therefrom to a grade of 6.4%; from the latter point to the center of the crossing it descends to a grade of 5.6%; and from the center of the crossing to a point 100 feet beyond it again ascends to a grade of 9.55%.

There are many assignments of error. But as the plaintiff's right of recovery, in the first instance, depends upon the establishment of negligence on the part of the defendant, it is useless to discuss the allegations of error generally unless negligence is proved. The negligent acts of defendant alleged in the declaration follow: (1) failure to keep a proper and sufficient look-out at the crossing ;(2) failure to blow a whistle and ring a bell when approaching the crossing; (3) failure to bring the railroad car to a stop when it saw or by the exercise of ordinary care it should have seen the Gregg automobile; (4) failure to bring the railroad car to a stop after the automobile was on the crossing so as not to shove and crush the same.

If by the first allegation of negligence the plaintiff means that it was the duty of the defendant to keep a watchman at this crossing, the plaintiff has signally failed to show that duty. A watchman is ordinarily required only where the crossing is a very dangerous one due to some obstruction in vision of travelers approaching the track or in thickly settled communities. Neither condition is shown to have existed here. Besides, owing to the defective condition of a bridge between this crossing and Fairmont, the north bound traffic to Fairmont was diverted from this crossing over the Locust Grove Route, so that the crossing was ordinarily used only by those who lived between it and the bridge. We would infer from the language in the declaration that what the plaintiff intended to charge was that the defendant failed to keep a proper and sufficient lookout through its trainmen. The motorman of the work car testifies that as soon as the road over which the Gregg car was traveling became visible to him, he looked in that direction and saw no car approaching; he then looked to the left (in the direction of the bridge), and that just as he was swinging his vision back to the right he heard one of the train crew call "Look out, Ray". He then saw the Gregg car about 30 or 40 feet away from the crossing. This evidence is not controverted. It shows affirmatively that a proper look-out was being maintained by the defendant.

There is no absolute requirement upon a railroad company to blow a whistle and ring a bell at a crossing unless made so by statute. The West Virginia statute applicable to such crossing is as follows: "A bell or steam whistle shall be placed on each locomotive engine which shall be rung or whistled by the engineer or fireman at the distance of at least sixty rods from the place where the railroad crosses any public street or highway and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached." Code, Chapter 54, section 61. This statute was passed in 1881 and re-enacted in 1882. At that time we did not have trains drawn by electric motors in this state. Consequently it cannot be said that this statute was intended to apply to electrically

equipped railroads. If further argument is needed on this point, our conclusion is confirmed by the language of the statute itself. Of course a bell can easily be placed on an electric motor, but it will not be seriously contended that an electric motor would have to be equipped with a "steam whistle". While we are of opinion that the statute does not apply in this case, nevertheless the common law requirement as to signals does apply, and that is fully as exacting as the statutory duty. What the notice and warning to the public shall be depends, under the common law, upon the circumstances of each case, but some adequate methods of apprising travelers of the crossing must be practiced. We find it stated in Ruling Case Law that the methods "almost universally" adopted are by the ringing of a bell or the sounding of a whistle or both, but that in order to make *both obligatory* the use of both must be called for by a statute. 22 R. C. L., p. 997, sec. 225.

"Crossings are sometimes safeguarded by means of bells which are caused to sound by a current of electricity set in motion by trains when within a given distance of the crossing. This method is regarded as effective for the purpose and is likely to come into general use." Elliott on Railroads (3rd ed.), Vol. 3, p. 408, sec. 1584. It therefore appears that the defendant had taken more than the usual precautions to give warning as to this crossing in that it had provided signals which would appeal to the sense of sight as well as the sense of hearing. In addition thereto it is the testimony of the motorman that as soon as he saw the Gregg car approaching the crossing (from 30 to 40 feet away) he applied the emergency brakes and blew the whistle. Turning again to Ruling Case Law, we find the following: "It is not necessary for the protection of the company that the victim should hear the warning, but it is only necessary that the warning should be such as ought to be apprehended by a person possessed of ordinary faculties in a reasonably sound, active and alert condition." 22 R. C. L., p. 998, sec. 225. And again: "the true form which the inquiry should take in cases of this kind is: Could the plaintiff by reasonable use of his senses have discovered the proximity of the approaching train in time

to avoid the accident.'' Idem, p. 1041, sec. 273. We cannot. conceive how a person of ordinary faculties in a reasonably alert condition could have failed to note some of the warnings given at this crossing.

The third and fourth allegations of negligence may be treated together. The uncontroverted evidence is that the motorman applied his emergency air brakes as soon as he discovered the proximity of the Gregg automobile which was all he could do to stop or check the electric car. The pictures taken immediately after the accident show that the railroad car could not have run more than 30 or 40 feet after the collision. Even expert testimony in favor of the plaintiff does not show that the railroad car could have been stopped in less space than it actually was stopped.

Consequently we find no charge of negligence against the defendant sustained by the evidence, and the judgment of the lower court is therefore reversed, the verdict set aside,, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*