The **PENNSYLVANIA RAILROAD COMPA-NY, a Pennsylvania corporation, De-fendant Below, Appellant,**

v.

**Shirley GOLDENBAUM, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Aug. 6, 1970.

Reargument Denied Sept. 10, 1970.

Jackson W. Raysor, of Tunell & Raysor, Georgetown, for defendant below, appellant.

John Merwin Bader, Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This appeal arises in a railroad crossing automobile accident case. There was a jury verdict for the plaintiff, widow of John Goldenbaum who was killed in the accident, against the defendant Railroad Company. The latter appeals on the ground that prejudicial error was committed by the Trial Judge in his instructions to the jury.

I.

These determinative facts are undisputed:

Goldenbaum was a passenger in an automobile being operated by William Travers in an easterly direction on Route 20 near

Seaford at night. The automobile and the defendant's train collided at the railroad crossing of Route 20 and the Cambridge branch line. Travers was familiar with the crossing, having driven over it twice each day, to and from work, for some time. The train blocked the crossing at the time of the collision. The Travers automobile struck the side of the locomotive at the second wheel journal.

In each direction on Route 20, on its approaches to the railroad crossing, there were erected a standard railroad "cross-buck" sign and a standard State Highway Department sign warning of the existence of the crossing. On the night of the accident, the cross-buck sign which would have faced Travers was down as the result of a previous accident. There were no warning lights or other devices at the crossing.

The railroad was a single track intersecting the highway at an angle of about 22 degrees. As a result, the train here involved approached the crossing from the same general direction as the Travers car, rather than at the usual right angle at which the beam of the headlight of an oncoming locomotive may have been seen. From the viewpoint of Travers, moreover, the railroad track was partially obscured by a fence and a mill. The train, consisting of a locomotive and 40 cars, approached the crossing at a speed of approximately 10 m. p. h.; the bell and horn were being sounded. When the train was about 150 feet from the highway, members of the crew saw an unidentified automobile speeding in a westerly direction on Route 20 (the opposite direction to that of the Travers car) toward the crossing. It being obvious that the unidentified motor vehicle was not stopping, the engineer applied the train emergency brakes. The unidentified vehicle barely cleared the front of the locomotive and proceeded on its way. The train continued over the crossing and came to a stop thereon, the front of the locomotive at the southerly shoulder of the highway, so that the crossing was completely blocked as the Travers car approached from the west. The unidentified car was last seen by the crewmen as it passed the Travers car, approaching from the opposite direction, at a point about 1000 feet away from the crossing. One witness testified that Travers was driving at about 45 m. p. h.; a state police officer estimated his speed as having been in excess of 70 m. p. h. These facts impel the conclusion that the train had blocked the crossing for less than 30 seconds at the time of the collision.

## II.

The Railroad Company complains that the Trial Court refused to instruct the jury in accordance with its following requests for instructions:

"The Duty Of The Railroad #1

"It is a well-settled principle of law that due care on the part of a railroad company at a point where its tracks cross a public highway, means the timely employment of such methods as under the conditions there existing would ordinarily be necessary to notify persons attempting to cross said tracks of the approach of its trains.

"But it is equally well-settled that due care, on the part of individuals on the public highway approaching such railroad crossings, means that they must use all the prudence, care and caution that a reasonably prudent and careful person would use under similar circumstances.

\*  \*  \*  \*  \*  \*

"Therefore, if you find that the methods employed by the railroad at this crossing were adequate to give timely warning to persons on the highway approaching the crossing with such care and caution as would a reasonable prudent and careful person under the circumstances then existing, then the absence of different or additional means of warning would not be a proximate cause of the

accident, and your verdict must be for the defendant railroad unless you find by a preponderance of the evidence that the train crew was in some way negligent and that negligence was a proximate cause of the accident.

"The Duty Of The Railroad #2

"On the other hand, the railroad contends that its locomotive was in the crossing and blocking the highway for a sufficient period of time that the driver of the vehicle in which the plaintiff's husband was riding should have observed the train upon the crossing and should have avoided the accident.

"Under ordinary conditions, the presence of a train upon or passing over a crossing is, itself, adequate notice to a traveler approaching the crossing of the obstruction thereof and it is not incumbent on the railroad company to give any additional warning of danger. The reason for this rule of law is that those in charge of the train are justified in believing the driver of the automobile equipped with proper lights and brakes will approach the crossing at a reasonable speed and will be able to observe the train on the crossing and to stop in time to avoid a collision.

\* \* \* \* \* \*

"Therefore, if you find that the locomotive was blocking the crossing at a time when the motor vehicle was a sufficient distance from the crossing that the motor vehicle, if operated at a lawful and reasonable speed, could have been brought to a stop and the collision thus avoided, then your verdict must be for the defendant railroad."

In support of the above requests for instructions, the Railroad Company contended that in imposing standards of care as to warnings owed by it to motorists at a crossing, the law differentiates between due warning of the approach of a train to the crossing, on the one hand, and due warning of a train lawfully blocking the crossing, on the other. In support of this contention, the Railroad Company relied upon Philadelphia & R. Ry. Co. v. Dillon, 1 W.W.Harr. 247, 114 A. 62 (1921) wherein the plaintiff's automobile collided with an unlighted freight car which was standing on the tracks at a street intersection at night. This Court there stated:

"The train was lawfully across the highway. The absence of lights on the train, or shown by the trainmen, or other signals to travelers of the presence of the train there is the negligence charged. It is not in itself negligence for a railroad company to allow a train of cars to remain a reasonable or lawful length of time across a highway. \* \* \*. The absence of such lights or warning signals does not of itself prove that the company was negligent as to the plaintiffs. \* \* \*. There was no statute or ordinance which required such lights or warning, or regulating the speed of or lights on the automobile. The trainmen and the driver of the automobile each had a right to presume that the other would act as a reasonable person under all the conditions and surroundings of the crossing until the contrary should appear. \* \* \*.

"Here, then, the railroad company had a right to assume that the plaintiffs would act in a reasonable way to avoid running into the train of box cars while it was lawfully standing across the highway. If the defendant's trainmen had a right to assume that a reasonably careful man driving an automobile on a highway at night would use such lights and adopt such a rate of speed as that he could bring his machine to a standstill within the distance that he could plainly see by the lights on his machine a railroad box car twelve feet high standing across the highway motionless on a railroad track, and completely obstructing his passage along a straight unobstructed highway, then the defendant did not then omit to perform any duty by not showing lights, or giving

other warning of the presence of the train. * * *."

The Railroad Company also relied upon Jones v. Pennsylvania R. Co., 5 Del.Super. 486, 61 A.2d 691 (1948); Douglas v. Central R. Co. of N. J., 26 N.J.Super. 208, 97 A.2d 684 (1953); Mabray v. Union Pac. R. Co. (D.C.Colo.) 5 F.Supp. 397 (1933); Wm. A. Smith Construction Co. v. Brumley (10 Cir.) 88 F.2d 803 (1937); Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F.2d 403 (1933); Thomson v. Stevens (8 Cir.) 106 F.2d 739 (1939).

In the *Jones* case, in which an unlighted freight train was moving over a crossing at night, the Superior Court followed *Dillon* and held that the presence of the train upon the tracks in itself was adequate warning of the presence of danger. The other cases cited by the Railroad Company are to the same general effect.

The Trial Court declined to give the instructions requested by the Railroad Company. Instead, the Trial Court charged the jury in the usual form on negligence and proximate causation generally; and, specifically, it charged as follows:

"Now, in this case, the plaintiff contends that at the time and place of the accident the intersection in question was not adequately protected by warning devices and that the defendant was therefore negligent and that such negligence was a proximate cause of the accident and the resulting death. The defendant, on the other hand, contends that the intersection was adequately protected by warning devices at the time and place of the accident and that it was in no way negligent; and, alternatively contends that even if it was negligent in failing to provide adequate warning devices at the intersection, that such negligence was not a proximate cause of the accident and the resulting death.

"The issue you must decide then, in the light of the principles of law I have stated to you, is whether or not the defendant was negligent in providing adequate warning devices at the intersection and, if so, whether such negligence was a proximate cause of the accident."

Also, the jury was instructed as follows:

"In this case, the conduct of the driver of the automobile is not before you. This is because the deceased cannot legally be held responsible for the driver's conduct."

The Railroad Company made a general objection to the charge, taking exception only to the failure of the Trial Court to give the two requested instructions set forth above.

On this appeal, the Railroad Company claims prejudicial error in the Court's failure to charge as requested, and in stating to the jury that "the conduct of the driver is not before you."

III.

We agree that there was error as to both facets of the jury charge to which the Railroad Company points.

The Railroad Company was entitled to a charge, along the lines of its Request No. 1, as to the general standards of care owed by a railroad company and a motorist, one to the other, at a grade crossing. See Evans v. Pennsylvania R. Co. (3 Cir.) 255 F.2d 205 (1958); Gray v. Pennsylvania R. Co., 3 W.W.Harr. 450, 139 A. 66 (1927).

More importantly, the Railroad Company was entitled to an instruction giving the substance of its Request No. 2. That prayer was in conformity with the time-honored general rule, recognized by this Court in *Dillon,* that in the absence of statute [1] the presence of a train upon the

---

1. In Delaware, there is no statutory duty imposed upon a railroad company to place warning lights at a grade crossing. Under 26 Del.C. § 708, a railroad company has the duty of erecting "Railroad Crossing" signs at every grade crossing; and by 17 Del.C. § 705, certain locomotive whistle signals are required at every

tracks, lawfully blocking a highway, may in itself be adequate warning of the presence of danger under ordinary circumstances and conditions; that in such ordinary situation the railroad company is under no duty to give additional notice or warning of the danger. The rule is based upon the established right of the railroad to assume that a motorist at night will adopt such lights and speed as will enable him to see a train across the highway and to stop before colliding with it. The rule has prevailed in this jurisdiction for decades; and it remains in effect generally elsewhere. Annotation, 84 A.L.R.2d 813, 850.

There is a well recognized exception to this general rule, however: Where the crossing involved is an extraordinarily dangerous one under the totality of surrounding circumstances then prevailing, a railroad company may be under a duty to give additional warning of the presence of a train on a crossing. The exception is exemplified by Evans v. Pennsylvania R. Co. (3 Cir.) 255 F.2d 205 (1958). Circumstances and conditions that may be considered in this connection are matters such as: the general terrain; the grade of the highway and of the crossing; the effect of the grades on angle of headlights; the volume of motor traffic on the highway; the frequency of trains on the railroad; the angle at which the railroad track and the highway meet; physical obstructions to the motorist's view of the crossing; and the existence or nonexistence of lights on the train. See Annotation, 84 A.L.R.2d

813, 855–863; 44 Am.Jur. "Railroads" §§ 501, 502.

We hold that, under the evidence in this case, a proper jury instruction would have combined the teachings of both the *Dillon* and *Evans* cases, covering both the general rule and its exception. Failure to give such instruction in this case must be deemed reversible error.

It would have been preferable for the Railroad Company to have objected to the charge more specifically, as is required by Superior Court Civil Rule 51, Del.C.Ann.[2] But we think the requests and the objection made were sufficient to have alerted the Trail Court to the problem and to have imposed upon the Court the duty of giving a proper charge on this basic and fundamental issue of the cause. Wiggins v. State, Del.Supr., 210 A.2d 314, 316 (1965); McNello v. John B. Kelly, Inc. (3 Cir.) 283 F.2d 96 (1960); State Highway Department v. Buzzuto, Del.Supr., 264 A.2d 347, 351 (1970).

## IV.

There was error, too, in the Trial Court's statement that the conduct of Travers was not before the jury for consideration. The Railroad Company premised its basic defense upon the contention that the sole proximate cause of the accident was Travers' negligence. Thus, it is reasonable to assume that the subject statement was prejudicially misleading to the jury. Although the Railroad Company failed to object to this portion of the

grade crossing. But the duty for any and all other warning devices at grade crossings is placed upon the State Highway Department by 17 Del.C. § 710, as follows:

"Whenever the Department determines that any State Highway or public road crossing of a railroad at grade is inadequately protected, the Department shall erect and maintain such signs, signals, lights or other devices as will in the opin-

ion of the Department furnish more adequate protection to the traveling public."

2. Superior Court Civil Rule 51 provides in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto * * * stating distinctly the matter to which he objects and the grounds of his objections."

charge in compliance with Superior Court Civil Rule 51, we comment upon it for guidance of the Trial Court on the re-trial.

\* \* \*

For the reasons stated, the judgment below must be reversed and the cause remanded for new trial.