## WALTER D. CUNNINGHAM *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY

[No. 601, September Term, 1974.]

*Decided March 17, 1975.*

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*W. Kennedy Boone, III*, with whom were *Wachs, Kreykenbohm & Boone* on the brief, for appellant.

*Daniel W. Moylan* and *William P. Nairn*, with whom were *Byron, Moylan & Urner* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Walter D. Cunningham, appellant/plaintiff, sued The Baltimore and Ohio Railroad Company, appellee/defendant, for damages sustained when his car ran into appellee's train on March 13, 1972 in Martinsburg, West Virginia. Appellant filed a notice of his intent to rely on the statutes and common law of West Virginia pursuant to Md. Code, Art. 35, §§ 47-50. Judge Irvine I. Rutledge sustained a demurrer to the original declaration with leave to amend. Appellant filed an amended declaration, a demurrer to which was sustained without leave to amend by Judge Rutledge. It is from this action that appellant brings this appeal.

Appellant's amended declaration reads in pertinent part as follows:

"That at or about 8:10 p.m. on the 13th day of March, 1972, the said Walter D. Cunningham was operating an automobile owned by him which was traveling in an easterly direction on State Route 9, two hundred feet east of the State Route 9/13 intersection in Martinsburg, Berkely County, West Virginia; that the posted speed limit on State Route 9 at that point and at that time was 55 miles per hour; that at that same time the corporate Defendant was the owner and operator of a railroad including both tracks, trains, and spur line, running North and South across State Route 9, a public highway in Berkely County, West Virginia; that as the Plaintiff approached this crossing he was

unaware of and had no knowledge of the existence of said spur line crossing; that in addition darkness had fallen and visibility was consequently reduced; that at that time a train made up of an Engine and cars owned by the corporate Defendant and operated by its agents, servants, or employees, had backed in a southerly direction on said track across State Route 9 and was stopped or almost stopped across State Route 9 at the State Route 9 railroad spur line crossing; that it was the duty of the corporate Defendant, acting by its agents, servants or employees to operate its railroad in a careful and prudent manner to avoid injuries to others lawfully traveling on State Route 9; to maintain or provide a watchman or flagman to warn oncoming motorists of the presence of the train standing or almost standing in the darkness across the State road; or to maintain electric safety devices, bells, or lights at or near the crossing herein above described to give adequate warning to oncoming vehicles approaching said spur line crossing of the presence of a train blocking a State road in the darkness, or to give adequate warning by any other means of the fact that there was a spur line crossing and/or that a train was stopped or almost stopped on this crossing blocking the lawful travel of vehicles on State Route 9 in order that the operator of a vehicle approaching the crossing at a rate of speed at or within the posted limit of 55 miles per hour would be warned of the presence of the stopped or almost stopped train blocking State Route 9 in the darkness in sufficient time to be able to come safely to a stop in order to avoid injury to himself and/or in order to stop and/or to look and listen for oncoming train traffic; but in spite of these duties the said corporate Defendant, acting by its agents, servants or employees carelessly and negligently failed to operate its railroad in a careful and prudent manner to avoid injuries to others lawfully

traveling on State Route 9; failed to provide a flagman or a watchman to warn of the presence of the stopped or almost stopped train blocking the State road in the darkness; failed to maintain or provide electric safety devices or proper lighting or bells, or other signal devices at or near the above stopped or almost stopped train on said spur line crossing to warn of the presence of the stopped or almost stopped train blocking the State road in the darkness; and/or failed to give, provide, or maintain adequate warning of any other nature or by any other means of the presence of the stopped or almost stopped train blocking State Route 9 in the darkness; and as a result caused and allowed the Plaintiff, who was operating his vehicle in a careful and prudent manner, to crash into a boxcar which was part of the above train owned by the corporate Defendant, and which was operated by its agents, servants, or employees, and which was situate across the road at the above crossing blocking the entire lane of travel of the Plaintiff."

The trial judge found that this declaration did not state facts sufficient to establish negligence on appellee's part and further that the facts established that the appellant was guilty of contributory negligence.

In making our determination of the propriety of the trial judge's actions, we are bound by the substantive law of West Virginia; procedural matters however are governed by the law of Maryland. *Vernon v. Aubinoe,* 259 Md. 159, 162, 269 A. 2d 620 (1970); *Joffre v. Canada Dry, Inc.,* 222 Md. 1, 6, 158 A. 2d 631 (1960).

### The Primary Negligence of the Railroad

The duty of a railroad to warn motorists at or near a railroad crossing in West Virginia was discussed in *Niland v. Monongahela West Penn Public Service Co.,* 106 W. Va. 528, 147 S. E. 478 (1929) where the Court stated at 479:

"There is no absolute requirement upon a

railroad company to blow a whistle and ring a bell at a crossing, unless made so by statute."

*Freeman v. Monongahela Valley Traction Company*, 98 W. Va. 311, 128 S. E. 129, 131 (1924).

The statutory duty of a railroad to provide warnings is contained in West Virginia Code, Ch. 31, Art. 2, § 3104 and § 3105.

The former section deals with trains approaching an intersection and provides:

"A bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman at a distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached, and any failure so to do is a misdemeanor punishable by a fine of not exceeding one hundred dollars;"

The latter section imposes a general duty applicable to all intersections and provides:

"Every railroad company shall, at every place where a road or street crosses its railroad on the same level, erect and maintain suitable signboards or notices of warning apprising persons of the danger in crossing its tracks."

It is thus readily apparent that a railroad's duty to warn motorists is substantially greater in situations where a train is approaching an intersection than in situations where a train has already crossed the intersection and is therefore blocking the road. It is the latter situation with which we are concerned in the instant case. Appellant's amended declaration contains no allegation that the railroad violated the statutory duty imposed by § 3105 to post signs on the highway warning motorists of the crossing. The allegation that the railroad "failed to give, provide, or maintain

adequate warnings of any other nature or by any other means of the presence of the stopped or almost stopped train" is concerned specifically with the railroad's duty to warn of the train's presence across the road and not with the railroad's duty to warn of the existence of the crossing itself.[1] The West Virginia code requires a warning bell or whistle only where a train is approaching an intersection. The cases cited by appellant in support of his contention are inapposite because they all deal with situations in which a train *approaching* a crossing fails to give adequate warning. That type situation calls for a greater duty of care on the railroad's part as is evidenced by the requirements of § 3104 cited above. Reason dictates such a distinction because it is clear that a motorist will be less likely to become aware of a train, often moving at high speed, approaching a crossing than one which is already directly in sight.

Under certain conditions, however, a railroad may have an additional duty to warn motorists.

> "As for the assertion that the absence of a flagman or other additional warning device constituted negligence, it is well settled that no general duty exists requiring the maintenance of flagmen or other signaling devices *in addition to* warning signs at railroad crossings, at least in the absence of conditions making the crossing unusually dangerous." *Morris v. Baltimore & Ohio Railroad Company, supra* at 651.

In *Hartzler v. Chesapeake and Ohio Railway Company,* 433 F. 2d 104 (7th Cir. 1970) quoting from *Central Indiana Ry. Co. v. Anderson Banking Co.,* Ind., 247 N.E.2d 208 (1969) the Court stated the majority rule in this regard at 106-107:

> "The doctrine prevailing in most jurisdictions, as

---

1. The trial judge in his opinion stated: "It is agreed between the parties that this crossing was protected by the usual railroad cross arms at the crossing and that back a distance of 220 feet from the tracks is a round sign approximately eighteen inches in diameter, with 'Railroad' on the sign. There are no gates or flasher lights." These signs were in compliance with West Virginia Law. Morris v. Baltimore and Ohio Railroad Company, 349 F. Supp. 649, 651 (S.D. W.Va. 1972).

the later cases show, is that where there is evidence that the particular crossing, either because of its more or less permanent features or because of circumstances existing and affecting its use at the given time, was more than ordinarily hazardous, a question for the jury or the trier of facts is usually presented as to whether or not reasonable care on the part of the railroad required it to provide a flagman to warn of approaching trains.

"On the other hand, in the absence of evidence of more than ordinary hazard attending public use of the crossing, there is, according to the doctrine generally laid down, no basis for the contention that the railroad company was under any duty to provide a flagman."

The prevailing definition of an "extra hazardous" or "unusually dangerous" crossing was given in *Lundberg v. Missouri-Kansas-Texas R. Co.*, Tex. Civ. App., 232 S.W.2d 879, 883 (1950):

"The crossing in question was an extra hazardous one if the conditions surrounding it were so peculiarly dangerous that a person of ordinary prudence could not use the same with safety unless the defendant employed extraordinary means to give warning of the presence of its train standing across the highway. * * * Unless the conditions surrounding the crossing on the occasion inquired about rendered it more than ordinarily hazardous, the defendant was not required to take extraordinary means in protecting it."

*Pennsylvania Railroad Company v. Goldenbaum*, Del. Supr. 269 A. 2d 229, 234 (1970).

Just what conditions will make a crossing dangerous depends on the factors present in each case. From our review of the cases, both Federal and state, in West Virginia and elsewhere, the following factors appear to be important in the determination:

1. The slope of the road as it meets the tracks (*Hartzler v. C. & O. R.R. Co., supra* at 106; *Buczkowski v. Canton R.R. Co.*, 181 Md. 377, 384, 30 A. 2d 257 (1943).)

2. The visibility of the tracks or crossing itself due to the terrain or the direction of the road. (*Chesapeake and Ohio Ry. Co. v. Elk Refining Co., et al,* 186 F. 2d 30, 31 (4th Cir. 1950); *Pennsylvania Railroad Co. v. Goldenbaum, supra* at 231; *Atlantic Coast Line R. Co. v. Johnston*, Fla., 74 So. 2d 689, 690 (1954).)

3. The visibility of the train itself due to the angle at which the tracks and the road intersect. (*Chesapeake and Ohio Ry. Co. v. Elk Refining Co., et al, supra.*)

4. The effect of the grades on the angle of a car's headlights (*Hartzler v. C. & O. R.R. Co., supra* at 106.)

5. The lack or invisibility of signs warning of the crossing's existence (*Chesapeake and Ohio Ry. Co. v. Elk Refining Co., et al, supra* at 31.)

6. Atmospheric conditions such as fog, dust, mist, snow or rain which would prevent or obstruct normal night vision (*Tuck v. Chesapeake and Ohio Railway Company*, 251 F. 2d 180 (4th Cir. 1958); *Ramsey v. Louisiana & A. Ry. Co.*, La. App., 70 So. 2d 171 (1954); *Lundberg v. Missouri-Kansas-Texas R. Co., supra* at 883.)

In the case at bar, appellant alleged no conditions which could make the crossing in question "unusually dangerous" and thus impose additional obligations on the railroad to warn motorists. In that regard he alleged only that darkness had fallen. That alone is not sufficient. *Eason v. Missouri Pacific Railroad Company*, 191 Kan. 39, 379 P. 2d 351, 353 (1963); *Capelle v. B. & O. Railroad Co.*, 136 Ohio St. 203, 24 N.E.2d 822, 824 (1940).

We, therefore, affirm the trial court's finding that the appellee was not negligent.

### The Contributory Negligence of Appellant

West Virginia follows the majority rule that a driver must be able to stop or control his car within the range of his vision ahead. *Wolfe v. Beatty Motor Express*, 143 W. Va.

238, 101 S.E.2d 81, 85 (1957); *Divita v. Atlantic Trucking Co.*, 129 W. Va. 267, 40 S.E.2d 324 (1946); 2 *Blashfield Automobile Law and Practice*, § 105.37, at 363.

In both *Wolfe* and *Divita*, plaintiffs were found to be guilty of contributory negligence when they collided at night with unlit tractor trailers which were stopped in the right lane of the highway.

In *Tuck v. Chesapeake and Ohio Railway Company, supra,* the Fourth Circuit, interpreting West Virginia law, affirmed the trial court's dismissal of plaintiff's suit. Plaintiff's decedent while driving along a West Virginia highway struck the 19th car of defendant's train; the visibility was poor because of rain and fog. The defendant had placed the required warning signs on the highway. The Court stated, at 182:

> "We do not here decide that running into the side of a moving train at night is always in law an act of contributory negligence. We hold only that the circumstances shown in the opening statement as elaborated are unequivocal and leave no room for any inference other than one of contributory negligence."

In *Eason v. Missouri Pacific Railroad Company, supra,* a case on all fours with the instant case, the plaintiff on an "extremely dark" night struck defendant's railroad car which was "parked" across a state highway. The plaintiff further alleged:

> "That at the time defendant's train was stopped across the Highway herein mentioned, said defendant did not have any warning signals of any kind at or near its train to warn the public or this plaintiff that it was stopped across the highway; neither did defendant have any watchman or signal man of any kind or nature to warn this plaintiff of the existing danger.
>
> "That the defendant was guilty of the following acts of negligence any and each of which was and

were the proximate cause of the accident and resulting damages to plaintiff, to-wit:

> (a) Failing to warn the public or this plaintiff of the existence of its train across the highway;
>
> (b) Failing to have lights on said train;
>
> (c) Failing to have a watchman or signal man on the west side of the box car to warn plaintiff to stop." *Id.* at 352.

The Supreme Court of Kansas reversed the trial court's overruling of the railroad's demurrer and held that the plaintiff's allegations "not only fail to allege actionable negligence on the part of defendant but also show plaintiff to have been guilty of contributory negligence, barring his recovery." *See Pennsylvania Railroad Company v. Goldenbaum, supra; Ramsey v. Louisiana, supra.*

In the instant case, the trial court correctly concluded on the basis of appellant's amended declaration that appellant was guilty of contributory negligence in failing to stop his car before colliding with appellee's train.

*Judgment affirmed.*
*Appellant to pay costs.*