With the benefit of first hand evaluation of the witnesses, the Deputy Commissioner found, on ample evidence, that plaintiff failed to prove that he suffered hernias due to work related incidents as required by N.C. Gen. Stat. § 97-2(18).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The employer-employee relationship existed between the plaintiff and the defendant-employer on or about October 7, 1991, and the parties were subject to and bound by the North Carolina Workers Compensation Act at all times relevant to these claims.
2. The parties entered into a Form 21 agreement for a hernia sustained by the plaintiff on or about July 3, 1990, at which time plaintiff had an average weekly wage of $389.60, subject to wage verification, yielding a compensation rate of $259.74.
3. Plaintiff is seeking compensation for hernias allegedly sustained on or about October 7, 1991, and October 26, 1992. The Form 33 claiming an injury on October 26, 1992 was filed with the Commission on October 25, 1994, a few days prior to the hearing.
* * * * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. The Industrial Commission has jurisdiction over the subject matter of this claim, all parties being properly before the Commission and subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer at all times relevant to this claim.
3. The parties entered a Form 21 agreement paying compensation to plaintiff for a hernia sustained on or about July 6, 1990 under which plaintiff was paid $779.22 in IC File 073606.
4. Because he had a prior workers' compensation hernia claim that was accepted as compensable by the defendant-employer, the plaintiff was aware of the benefits he could receive if he timely reported such an on the job injury.
5. Prior to October, 1991, the plaintiff had been employed with the defendant employer for about seven years, and in October, 1991 he worked in the paint department. The employer makes parts for aircraft.
6. In October, 1991, plaintiff had been assigned to help clean out a building which housed a plant that had recently closed in Fountain Inn, South Carolina. On Monday, October 7, 1991, he went with co-employees, Keith Elledge and Annette Sullivan to the South Carolina plant. The three rode from Shelby, North Carolina down to the plant together in a van, a trip that took about one hour and 45 minutes. Elledge and Strain rode in the front seat and Sullivan sat behind and between the two men, and the three of them talked.
7. Before they left for South Carolina on October 7, 1991, around 6:50 a.m., plaintiff talked with Franz Watts, his supervisor. Plaintiff told Watts he was tired because he had helped his in-laws load five dumptruck loads of firewood over the weekend.
8. On October 7, 1991, as they talked during the drive to the South Carolina plant, plaintiff told Elledge and Sullivan that he was sore and tired from loading firewood over the previous weekend, and that he and his father-in-law had loaded five dumptrucks of wood.
9. Also on the ride down to South Carolina, plaintiff said to Sullivan and Elledge that he could get more money if he were injured at work and could draw workers' compensation than if he were injured off the job.
10. At the hearing, plaintiff testified that while working at the South Carolina plant that day, he picked up a piece of steel weighing 50 to 75 pounds and was dumping it into a chip hopper when a bulge popped out from his abdomen, and that when this happened he told Keith Elledge what had happened. However, based upon the greater weight of competent evidence of record, as set out below, the undersigned finds that this incident did not occur.
11. Annette Sullivan worked with plaintiff the entire day except for any short time she may have been away in the restroom. They were picking up paper trash and empty cardboard boxes. There were some shelves with empty boxes on them and plaintiff would throw the boxes down to Sullivan and she placed them on a pallet. These boxes if bundled together would weigh less than ten pounds. The pallets weighed at most ten pounds, and she and plaintiff were able to drag them to move them.
12. Sullivan never saw the incident plaintiff described when he allegedly lifted the piece of steel. Sullivan did not see any metal scraps in the area and she did not lift any such metal pieces. The dumpsters they were using for trash were less than four feet high, because they were not chest high on Sullivan.
13. After lunch and before the plaintiff reported anything to Keith Elledge, plaintiff was lying on the floor when Annette Sullivan saw a knot on the plaintiff's abdomen, below the breastbone. Sullivan asked him about it, and plaintiff told her to hush and not say anything about it.
14. Around 1:00 p.m., plaintiff told Elledge that he was hurt. Plaintiff pulled his shirt up and showed Elledge knots on his stomach and told him he thought he had a hernia. Elledge asked whether he did it at home or at work and plaintiff said he didn't know. Elledge then decided they would return to Shelby so that plaintiff could seek medical treatment.
15. Although he first told Elledge he did not know what caused his hernia, about 45 minutes after he initially reported the injury, plaintiff told Elledge he injured himself when he had picked up a piece of steel and thrown it in a dumpster over his head.
16. When she learned what plaintiff had told Elledge, Sullivan told Elledge in front of plaintiff that she had seen the knot earlier that day.
17. The undersigned finds the testimony of Sullivan and Elledge to be very credible. Based upon their competent and credible testimony as well as the plaintiff's testimony and demeanor at hearing, the undersigned does not accept the plaintiff's testimony as credible.
18. Since the plaintiff's testimony is not credible and is otherwise contradicted by competent and credible evidence of record, the plaintiff has failed to prove that he experienced a specific traumatic incident or sustained an injury by accident that resulted in a hernia which appeared suddenly on October 7, 1991.
19. Shortly after October 7, 1991, plaintiff was seen by Dr. Robert L. Laney, a surgeon, who diagnosed two abdominal areas of herniation, specifically a recurrent ventral hernia and an umbilical hernia, which were surgically repaired on October 11, 1991.
20. Plaintiff remained out of work following this surgery at least until March 4, 1992, during which time he drew benefits under his group disability plan. He continued his follow-up with Dr. Laney.
21. On March 4, 1992, Dr. Laney examined plaintiff and noticed a left inguinal hernia, which Dr. Laney described as a direct hernia. Plaintiff told Dr. Laney that his brother, Dr. Bryan Strain, had diagnosed a left inguinal hernia and that it was giving him vague discomfort. Plaintiff did not want surgery for the inguinal hernia at that time.
22. Plaintiff continued under Dr. Laney's care. On May 4, 1992, Dr. Laney noted that plaintiff was having no discomfort from his left inguinal hernia, but advised plaintiff that he would need surgery for this hernia in the future, but could postpone it since he was asymptomatic.
23. Plaintiff testified that on October 26, 1992, while working for defendant-employer with a torque wrench, he felt something pop out above his left leg, and claims this was the onset of his inguinal hernia. For reasons stated in this opinion, including the testimony of co-employees and the medical evidence which contradict plaintiff, as well as plaintiff's own demeanor and testimony, the undersigned finds plaintiff's testimony is not credible, and does not support his contention that he sustained an injury by accident resulting in the sudden onset of a hernia on October 26, 1992.
24. In October 1992, while Franz Watts was his supervisor, plaintiff told Watts that he had some stinging and burning in his groin area. He did not report any specific incident or accident to Franz Watts, and specifically never mentioned any accident with a torque wrench.
25. In October 1992, plaintiff also spoke with Anita Ross, personnel manager for the defendant-employer. One morning around 8 am, plaintiff told Ross that he had been sick for several days, and had been having stinging and pain in his groin for several days and it had gotten so bad he could not work that day. Plaintiff never reported any accident or injury at work to Anita Ross, but told her he didn't know how he did it. Anita Ross never heard anything about the alleged torque wrench accident of October 26, 1992 until the hearing of this claim on November 1, 1994 in Shelby.
26. The medical notes of Dr. Laney's office indicate that as of October 28, 1992, plaintiff's inguinal hernia was getting larger and plaintiff recently had noticed a small epigastric hernia. There are follow-up notes dated November 3, 1992. There is no mention in any of these notes of the alleged accident with the torque wrench and it appears plaintiff never reported such an incident to Dr. Laney.
27. Regardless of plaintiff's testimony, as noted above, the medical evidence, specifically the records of Dr. Laney, shows that the left inguinal hernia for which plaintiff was treated in October, 1992 had been diagnosed as early as March 1992 and did not appear suddenly on or about October 26, 1992.
* * * * * * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that on or about October 7, 1991, he sustained a compensable injury by accident resulting in a hernia or rupture that appeared suddenly and did not exist prior to that date. N.C.G.S. § 97-2(18);Long v. Morganton Dyeing Finishing Co., 84 N.C. App. 81, 351 S.E.2d 767, rev'd on other grounds, 321 N.C. 82, 361 S.E.2d 575 (1987).
2. Plaintiff has failed to prove by the greater weight of the evidence that on or about October 26, 1992, he sustained a compensable injury by accident resulting in a hernia or rupture that appeared suddenly and did not exist prior to that date. N.C.G.S. § 97-2(18); Long v. Morganton Dyeing FinishingCo., 84 N.C. App. 81, 351 S.E.2d 767, rev'd on other grounds,321 N.C. 82, 361 S.E.2d 575 (1987).
* * * * * * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following
AWARD
1. Under the law, the plaintiff's claims must be, and the same are hereby DENIED.
2. Each side shall pay its own costs.
 S/ ___________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ___________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md